### W. & J. JAMES *vs.* WOODRUFF and others.

The right of a stockholder in a corporation to sell and transfer his stock, and to pass the legal title of such stock to the purchaser, ceases upon the dissolution of a corporation.

Upon the dissolution of a joint stock corporation the interests of the several stockholders are reduced to mere equitable rights to their several distributive shares of the funds of the corporation, upon principles of justice and equity among all the stockholders. And in making distribution each stockholder is to be charged with the debts due from him to the corporation, so as to equalize the distributive shares of all the stockholders in the fund after payment of all debts due by them respectively to the corporation.

Where a stockholder assigns his interest in the stock of a corporation after such corporation is dissolved, the assignee takes the interest of the assignor, in the effects of the corporation, subject to all claims against the latter in favor of the corporation.

The provisions of the revised statutes against stock-jobbing do not apply to the sale of the distributive shares of stockholders in the corporate effects of a corporation after it has been dissolved; such shares not being stock, but mere choses in action which are not negotiable.

Where the debtor of a corporation purchases from a stockholder his interest in the distributive share of the assets, after the corporation has been dissolved, such debtor is in the same situation as if he had owned that portion of the stock of the corporation at the time of its dissolution. And if he afterwards assigns his interest in the fund his assignee takes it subject to the payment of the debt of the assignor.

THIS was an appeal by the defendants from a decree of January 16. the assistant vice chancellor of the first circuit. On the 15th of May, 1837, the legislature passed an act to repeal the charter of the Lockport Bank; which act took effect on the 4th of June in that year. The repealing act made

the directors then in office the trustees of the creditors and stockholders of the company, until others should be appointed in their places by the bank commissioners, to settle the affairs of the bank, collect and pay its outstanding debts, and to divide its property and effects among its stockholders, after paying its debts and necessary expenses. The bill in this cause was filed in July, 1839, against the defendants Woodruff, Hunt and Wood, the then trustees of the corporation, to compel them to transfer, or to allow to be transferred to the complainants, on the books of the bank, eighty shares of stock, of the nominal amount of $2000, which stood in the name of C. F. Mitchell, on the 19th of August, 1837 ; and which he assigned to the complainants on the 16th of December in that year. The assistant vice chancellor decreed a transfer of the stock, on the books of the bank, with costs.

*S. Beardsley,* for the appellants. When the title to the eighty shares of stock became vested in Mitchell, the bank by its by-laws acquired a lien or equitable claim on such shares for the payment of his indebtedness to the bank. (1 *R. S.* 600, § 1, *sub.* 6. *Laws of* 1829, *p.* 327, § 3, *and p.* 329, § 22 *and* 27. 3 *Paige's Rep.* 350, 361.) As the purchaser of the stock could acquire no legal title to it until the transfer was made on the book of transfers of the bank, the complainants took it subject to the equitable claims on it in favor of the company. As the stock was assigned to the complainants in payment of an antecedent debt, the complainants have no equity superior to that of the bank. (2 *Wheat.* 390. *Angel & Ames on Corp.* 321. 2 *Cowen,* 770. 11 *Wend.* 627.) The eighty shares of stock, by the repeal of the charter of the bank, gave to the holder a mere equitable right to a distributive share of the funds of the corporation ; and the assignee of such right takes it subject to any offset or equitable claim of the bank against the assignor. And the trustees became subject to the same laws which regulate receivers of insolvent corporations, or the trustees of insolvent debtors. (6 *Paige's*

*Rep.* 220. 2 *Id.* 581.) Equity ·requires that cross de-
mands should be set off against each other. Whether the
eighty shares be considered as so much stock, or as giving
merely a right to a proportion of the funds of the bank, the
complainants are not entitled to a transfer of the stock in
either case. The trustees have no authority to transfer the
stock, unless for the purpose of settling a claim against the
bank, or of securing or paying a debt of the bank.

*D. Selden,* for the respondents. The complainants were
entitled to the eighty shares of the stock of the Lockport
Bank; and the defendants having assumed the duties of
trustees, under the statute dissolving the charter of the bank,
were bound to allow the transfer thereof on the books of
the bank to the complainants. The charter of the bank
was framed according to a general system of legislation,
whereby it was intended that the stock of the bank should
never be applied to the security or payment of a debt due
the bank. All by-laws of the bank in contravention of the
charter are void. Even without the provisions of the char-
ter, which prevents the bank from taking its stock as secu-
rity, the complainants have the better right to the stock in
question. The provision which requires a transfer to be
made on the books, does not prevent a sale of the stock,
but enables the holder of the certificate to claim in equity
a transfer, when the transfer is refused. The defendants
have no right in or lien upon the stock in question; and
even if they could acquire a lien, by the charter, it passed
to Mitchell from an individual who was not a debtor to the
bank, and from Mitchell to the complainants, under circum-
stances which precluded the defendants from acquiring any
right or lien.

THE CHANCELLOR. The facts of this case, so far as they
can be ascertained from the pleadings and proofs, are as
follows : At the time of the repeal of the charter of the
Lockport Bank, which repeal took effect on the 4th of
June, 1837, C. F. Mitchell owed that institution three

1844.

James
v.
Woodruff.

notes, of $1830 each, dated the 18th of May, 1837, payable in six, nine and twelve months from date ; which notes were given for a balance due for moneys previously loaned by the bank to the firm of Mitchell & Lukins, of which firm C. F. Mitchell was one of the copartners. The stock in question was sold and transferred to Mitchell, by E. Leonard, on or before the 19th of August, 1837 ; and it stood in his name on the books of the trustees on that day. Mitchell, and his copartners in the firm of C. F. Mitchell & Co., consisting of himself and Parsons and Gooding, were also indebted to the bank in another large sum, for moneys loaned to them. Mitchell & Lukins were also indebted to the complainants, to the amount of six or seven thousand dollars, for moneys advanced and acceptances paid for that firm ; upon which indebtedness a judgment was recovered in May, 1837, and an execution was afterwards issued thereon. Negotiations were subsequently commenced between Mitchell and some of his friends, and the complainants, relative to staying the proceedings upon that judgment, and upon another judgment in favor of the complainants against him and his copartners in the other firm ; which negotiations finally resulted in an agreement to give the complainants certain notes, and to assign to them eighty shares of the Lockport Bank stock, in payment of their judgments.

Upon the question as to the time when this arrangement was finally agreed upon, there is some uncertainty in the testimony. But I am satisfied it must have been after this stock had been transferred to Mitchell ; although in his direct examination Mitchell appears to suppose that it was before the stock was transferred to him that he obtained the certificate from Judge Dayton. The evidence upon which I base my opinion that the stock was transferred to Mitchell before he made any definite agreement with the complainants to sell them such stock, in part payment of the debt, is this : Mitchell swears that he contracted with Leonard for the stock a short time previous to the 19th of August, 1837, and that he had not made any definitive arrangement with the complainants for the stock at that time. It

1844.

James
v.
Woodruff.

appears also from the letter of Woodruff, given in evidence by the complainants, that as late as the 21st of September Mitchell had not received any answer to the proposition he had made to the complainants. Mitchell thinks it was the latter part of August when he offered some money, eighty shares of the Lockport Bank stock, and certain notes of hand, as additional security for the complainants' judgments, if they would consent to a postponement. This was probably the proposition to which Woodruff's letter referred, and to which the complainants afterwards assented. And Field swears that it was in the fall of 1837 when he called upon the complainants, in behalf of Mitchell, with a memorandum from him stating the new securities that he proposed to give for an extension of time on the executions; and that one of the proposed securities, in that memorandum, was eighty shares of the Lockport Bank stock. Field indeed says that he thinks Mitchell was not then a stockholder in the bank. But in this he is clearly mistaken; as Judge Dayton swears there were eighty shares standing in Mitchell's name on the 19th of August, when he gave him a certificate to that effect. It is probable, therefore, that Mitchell did not think proper at that time to let the complainants know that he actually held this stock; fearing, perhaps, that they might not consent to the arrangement if they knew that fact but might attempt to reach the stock in some other way. It is also possible that the proposition submitted through Field may have been made in the fore part of September, and that it is the same proposition alluded to in Woodruff's letter, to which the complainants had not signified their assent on the 21st of that month.

What then were the rights of Mitchell as between him and the trustees of the institution, or rather as between him and the other stockholders of the institution, on the 19th of August, 1837 ? For the rights of the other stockholders are those which are opposed to the claims of the complainants in this suit. The question whether the bank, while it was in existence, had any lien upon the stock of a debtor

for a debt which had not yet become due, does not arise in this case. For if the debtor, before his debt was payable, would have had a perfect right to sell and transfer his stock, while there was a bank in existence having transferrible shares which could be transferred so as to give the legal title in such shares to a purchaser, still the dissolution of the corporation put an end, immediately, to the transferrible nature of the stock. And it thus reduced the interests of the stockholders to mere equitable rights to their several distributive shares of the corporate funds, upon principles of equal justice and equity among all the stockholders, after paying all debts and expenses. The stockholders were then, in this respect, in the same situation as the distributees of the estate of a deceased-parent or relative. There the executors or administrators are bound to give to each distributee his share of the decedent's property. But if any of the distributees are indebted to the estate, whether such debts are due and payable immediately or are to become due at a future day, their debts, with a rebate of interest if payable at a future time without interest, must first be applied towards or in part payment of their distributive shares of the estate ; and the balance alone can be recovered by them from the personal representatives of the decedent. At least such is the rule of equity where the distributee who is indebted to the estate is insolvent or irresponsible. And this right to a distributive share of the estate being a mere chose in action, the owner thereof cannot assign it to a third person, so as to give the latter any greater or other interest therein than the assignor himself possessed.

Here, if Mitchell had been the owner of these eighty shares of stock at the time of the repeal of the charter, on the 4th of June, 1837, he could only have claimed his share of the effects of the defunct institution, after deducting therefrom the debt due from him on the three notes of the 18th of May, 1837. And if the trustees had paid him the full amount of his distributive share of the assets, leaving those notes unpaid, it would have been a violation of their

1844.

James
v.
Woodruff.

trust, for which they would have been answerable to the other stockholders, if the amount of such notes had been afterwards lost to the fund. And when Mitchell bought Leonard's distributive share of the funds of the institution, which by the answer and the testimony it appears he did about the 17th of August, if there was no prior legal or equitable claim existing against such share in favor of these complainants, Mitchell was placed in the same situation, in relation to his right to a distributive share of the fund, as though he had been the owner of that stock at the time of the dissolution of the corporation. His subsequent agreement to assign it to the complainants, therefore, gave them no equitable right to claim a share of the fund belonging to the other stockholders, which Mitchell himself could not have claimed had he continued to be the owner of that distributive share ; that is, they took his interest in the fund subject to the payment of his notes, which interest must first be applied in satisfaction of them.

If the trustees have any other securities, belonging to Mitchell, which they hold as collateral to the payment of the notes, the complainants will be entitled in equity to such securities, upon payment of the debts due from Mitchell to the bank. But if the payment of the notes was only guarantied by third persons who stood in the situation of mere sureties for Mitchell, at the time he sold his interest in this part of the effects of the defunct institution to the respondents, the rights of those sureties will be paramount to those of the complainants ; for the complainants sit in the seat of their assignor, and can claim no equitable rights which he could not have claimed, as against his sureties, if he had not assigned his interest in these eighty shares. This bill is not properly framed to reach any such collateral securities which the defendants hold, nor is it suggested in the bill that they have any such. No examination as to rights of that kind, therefore, can properly be made in this suit. But as it is suggested that the defendants hold securities of some kind for the debt of Mitchell, or for some part thereof, the decision in this case ought not to prejudice the com-

1844.

James
v.
Woodruff.

plainants, if they can hereafter show that there will be any thing due to Mitchell as a distributee of the fund in the hands of the receivers, over and above his debts, after applying to the payment of such debts any money or property, or securities belonging to him, which are held by the defendants for the payment thereof, and which ought to be so applied in equity.

The decisions referred to, which have been made by courts in relation to the sale and transfer of stock in corporations which are existing and in full life have no bearing upon the case now under consideration, for the reasons above suggested. Nor does the stock-jobbing act apply to sales of distributive shares of the effects of a corporation which is dissolved; such shares not being stock, but mere choses in action which are not negotiable. I have not thought it necessary, therefore, to consider any of the cases as to the transfer of stocks in existing institutions, or as to agreements to purchase stocks which did not belong to the vendor at the time of the agreement. And as the complainants wholly failed to show that they were entitled to this distributive share of the stock, without paying the notes of Mitchell, it is not necessary to examine the question whether the other stockholders of the bank, who alone were interested in resisting the claim of the complainants, were not necessary parties to the suit.

The decree of the assistant vice chancellor must be reversed, and the complainants' bill dismissed with costs. But it must be without prejudice to any claim that they may have to any securities in the hands of the defendants, belonging to Mitchell, beyond the amount of the debts for which they are pledged, after applying his distributive share in the funds of the institution towards such debts. And neither party is to have costs as against the other in this court.

Decree accordingly.