Owen *v.* Smith.

VOLNEY OWEN, receiver, &c. of the Herkimer Manufacturing Company, *vs.* WILLIAM SMITH and others.

Upon the dissolution of a corporation the title to real property held by it does not revert to the original proprietors and grantors, or their heirs, but vests in the receiver of the corporation; and the property, real and personal, of the corporation, is to be administered by him for the benefit of creditors and stockholders.

The rule of the common law, in relation to the effect of a dissolution, upon the property and effects of a corporation, is a harsh and inequitable rule, and *it seems,* has never been, to the fullest extent, adopted and acted upon as the rule in this country; at least so far as the extinguishment of debts is concerned. And the rule was changed, in this state, by the act of April 9, 1811, for the relief of the creditors of corporations. (1 *R. L.* 248. 1 *R. S.* 600, §§ 9, 10.)

THIS case comes before the court upon an agreed statement of facts, under § 372 of the code. "The Herkimer Manufacturing Company" was incorporated by special act of the legislature, in 1833, "for the purpose of erecting a dam across West Canada creek in the town of Herkimer, in the county of Herkimer, at some convenient point northwardly from the village of Herkimer, and to conduct the waters of the said creek in such canal as they may construct near to the said village, and to discharge the same into the Mohawk river or West Canada creek, or both, at such place or places as they shall deem most convenient, thereby to create water power for driving all kinds of machinery ; and to carry on the manufacture of cotton and woolen goods and machinery, or either

of them separately, and to dispose of such water power as shall not be used by them." (*Laws of* 1833, *ch.* 165.) In 1833 and 1834 the ancestors of the defendants, by deed duly executed, conveyed to two of the associates named in the act of incorporation, certain premises in the town of Herkimer, described in the conveyance. Such conveyance was made to enable the company to carry out the enterprise contemplated, and with a view to the public benefit of the contemplated work, and also for a moneyed consideration, and conveyed the premises to the grantees in fee, in trust and upon the condition, 1st. That the waters should, within three years, be diverted and conducted as contemplated ; and 2d. That the lands conveyed should be used and occupied by the grantees, their heirs or assigns, for the purpose of constructing upon and through the same the necessary and proper works connected with the proposed diversion of the waters of said creek, or for the purpose of building lots." In May, 1836, after the complete organization of the company, the lands were conveyed to it, subject to the same conditions, by the grantees in the deeds named, to have and to hold to the said company, " its successors and assigns, fully, freely, absolutely and forever." The charter of the company expired by its own limitation in April, 1853, and the plaintiff was appointed receiver of its property and effects. The defendants have entered upon and been possessed of the premises as heirs at law of the original grantors and owners, and claim title thereto, as such heirs, upon the ground that upon the dissolution of the company the title to the real property reverted to the original proprietors ; and this question of property and right of possession is submitted, by the agreement of the parties, for the decision of the court.

*V. Owen,* plaintiff, in person.

*R. Earll,* for the defendant.

Owen *v.* Smith.

*By the Court,* ALLEN, J. No question is made in respect to the conditions of the conveyances to the corporation as expressed in them. It is conceded that these conditions have been substantially performed, so that there is no right in the grantors or their heirs as for conditions broken. Neither is it claimed that the grant was for a special purpose, and that such purpose having failed the title has reverted to the grantors. The grants were in fee, and vested the title absolutely in the corporation so far as it could take. A corporation can take a fee simple for the purposes of alienation, but at common law only a determinable fee for the purposes of enjoyment. (*Angell & Ames on Corp.* § 195. 2 *Kent's Com.* 282.) The only question is as to the effect of the dissolution upon the title to real property held by the corporation at the time it ceased to exist as a corporation. It is claimed that the common law rule is in force in this state, and the real property reverted to the original proprietors and grantors, or their heirs, and that the title to the premises in question vested, upon the expiration of the charter of the Herkimer Manufacturing Company, in the defendants as heirs at law of the grantors. In case of a dissolution or civil death of a corporation, in England, its personal property vests in the king, all its real estate, remaining unsold, reverts back to the original grantor or his heirs, and the debts due to and from the corporation are extinct. (*Angell & Ames on Corp. sup. Id.* § 779. 2 *Kent's Com.* 307.) This is a very harsh and inequitable rule, and I doubt if it has ever been to the fullest extent adopted and acted upon as the rule in this country ; at least so far as the extinguishment of the debts is concerned. It certainly has not been favored by the courts, or by legislatures. The supreme court of the United States has decided that the creditors of a corporation, after its dissolution, might enforce their claims against any property not passed into the hands of bona fide purchasers, but is still held in trust for the corporation or the stockholders thereof at the time of its dissolution. (*Mumma* v. *The Potomac Company,* 8 *Pet.* 281.

*Curran* v. *The State of Arkansas*, 15 *How.* 304.) Judge
Curtis in the last case says, "Whatever technical difficulties
exist in maintaining an action at law against a corporation
after its charter has been repealed, in the apprehension of a
court of equity there is no difficulty in a creditor following
the property of the corporation into the hands of one not a
bona fide creditor or purchaser and asserting his lien thereon,
and obtaining satisfaction of his just debts out of that fund
specifically set apart for its payment when the debt was con-
tracted, and charged with a trust for all the creditors when in
the hands of the corporation ; which trust the repeal of the
charter does not destroy." The same learned judge also cites
with approval the note to page 307 of 2 *Kent's Com.* to the
effect that "the rule of the common law has in fact become
obsolete. It has never been applied to insolvent or dissolved
moneyed corporations, in England. The sound doctrine now
is, as shown by statutes and judicial decisions, that the capi-
tal and debts of banking and other moneyed corporations con-
stitute a trust fund and pledge for the payment of creditors
and stockholders, and a court of equity will lay hold of the
fund and see that it be duly collected and applied." (*See also
Houghton* v. *Thornton*, 8 *Geo. Rep.* 491.) *Angell & Ames*,
in the 5th edition of their treatise on *corporations*, § 779 *a*,
say : "The rule of the common law in relation to the effect
of a dissolution upon the property and debts of a corporation
has in fact become obsolete and odious. Practically it has
never been applied in England to insolvent or dissolved mon-
eyed corporations ; and in this country its unjust operation
upon the rights of both creditors and stockholders of this class
of corporations is almost invariably arrested by general or spe-
cial statute provisions. Indeed, at this day, it may well be
doubted whether, in the view at least of a court of equity, it
has any application to other than public and eleemosynary cor-
porations, with which it had its origin. The sound doctrine
of equity is that the capital, or property, or debts due to
banking, trading, or other moneyed corporations, constitute a

Owen *v.* Smith.

trust fund pledged to the payment of the dues of creditors and stockholders." It will be seen that the term "moneyed corporation" is not used in the above quotations in the restricted sense given it by 2 *R. S.* 598, § 51, but includes all corporations created with a view to the pecuniary profit of the copartners.

The legislature of this state quite early, and in less than a month after the passage of the act authorizing the incorporation of manufacturing corporations, took means to remedy the gross injustice of the common law rule, and if the word "property" as used in the act passed with that view, included real as well as personal property, the common law rule was by it abolished, and the equitable rule contended for by Judge Curtis and Angell & Ames established in its place. The act was passed April 9th, 1811, (1 *R. L.* 248,) and was re-enacted in the revision of 1830. (1 *R. S.* 600, §§ 9, 10.) It is to the effect that upon the dissolution of any corporation, unless other persons shall be appointed by the legislature or other competent authority, the directors or managers of the affairs of such corporation shall be the trustees of the creditors and stockholders of the corporation dissolved, with full power to settle the affairs of the corporation, collect and pay the outstanding debts, and divide among the stockholders the moneys and other property that shall remain after the payment of the debts and necessary expenses. It is claimed that this act only reaches the personal property and effects of the corporation owned by it at the time of its dissolution, and that the rule of the common law still applies to the real property, and that it reverts to the original grantors, as before. But there is nothing in the act to restrict the term to personalty, and the equity of the creditors and stockholders is the same in respect to all species of property. In some corporations as manufacturing corporations, as in the corporation in question, the principal if not the entire property may be in realty, and there is no reason why that should be confiscated from the stockholders, any more than the personal property of a defunct

banking corporation should be taken from its stockholders. The time of the passage of the act would seem to indicate that protection to creditors and stockholders in manufacturing corporations was chiefly in the mind of the legislature, at the time of its passage, and in that case real property would not have been excluded. The term property must be deemed and taken to have been used in its general and popular sense, and so used it includes both lands and chattels. (*Bouvier's Law Dic. h. t. Soulard* v. *The United States,* 4 *Pet.* 511. *Jackson* v. *Housel,* 17 *John. R.* 281.) Chancellor Walworth, in an opinion delivered by him in the court for the correction of errors, in 1835, in the case of *Ducro* v. *Spriggs,* not reported, says : "The statutory provision, although rather obscure in its terms, evidently was intended to reach the real as well as the personal property of the extinct corporation, and was probably passed with particular reference to the real and personal estate of manufacturing companies who had been authorized to incorporate themselves under the general act passed a few days before." Chancellor Kent takes the same view of the case, and says : "This is a just and wise provision, and gets rid altogether of the inequitable consequences of the rule of the common law ;" (2 *Kent's Com.* 308, *note c ;*) and in *James* v. *Woodruff,* (10 *Paige,* 541, affirmed 2 *Denio,* 574.) A statute of New Jersey in all respects similar to this received a construction, in *McLaren* v. *Pennington,* (1 *Paige,* 102,) and it was held that the common law was changed by it, and all the property of the corporation vested in trustees for the benefit of creditors and stockholders. (*See per Chancellor at page* 111.) *Nicoll* v. *The New York and Erie Rail Road Co.,* (12 *Barb.* 460, 2 *Kern.* 121,) did not consider the construction of the act, or the effect of the dissolution of a corporation upon its property. What is said by Parker, J. in the supreme court, and again in the court of appeals, was merely incidental and by way of illustration, and the learned judge had not in his mind the act, and of course did not intend to

Owen *v.* Smith.

pass upon its construction or effect. *Bingham* v. *Weiderwax*, (1 *Comst.* 509,) is liable to the same remark, but the judge (Jewett) speaks cautiously, and the head note contains the substance of his remark: "It seems that on the dissolution of a corporation, the title to real estate held by it reverts back to its original grantor, and his heirs, unless there is some provision in the charter, or some other statutory provision to avert that consequence."

It would seem from the qualification, that the learned judge supposed that there was a legislative provision in this state to "avert the consequences" of the common law rule. *People* v. *Mauran*, (5 *Den.* 389,) and *Aikin* v. *Albany, Vermont and Canada Rail Road Co.*, (26 *Barb.* 289,) decided other and entirely different questions. The construction of this act was not considered at all by the court in either case. *Flyn* v. *Chase*, (18 *Pick.* 63,) may be properly cited as evidence of the leaning of courts in favor of the equities of creditors and stockholders of dissolved corporations. It was held in that case that under a statute providing that corporations might be continued bodies corporate for the term of three years after the expiration of their charter, for the purpose of settling their concerns, but not for the purpose of continuing the business for which they were established, a bank was authorized, immediately before the expiration of such term of three years, to indorse a note held by it, to trustees appointed to wind up the affairs of the bank, and vested by it with all the powers of the corporation. Wilde, J. says: "This is a just and wise remedial law, and ought to be liberally expounded." "The object of the statute was effectually to guard against the inequitable consequences of the rule of the common law." So too, our own statute is a remedial statute, having the same object in view, and should receive the same liberal exposition. By it the common law rule was changed and the property real and personal of an extinct corporation administered for the benefit of the creditors and stockholders. The title to the

real as well as personal estate of the Herkimer Manufacturing Company vested in the receiver, and did not revert to the original grantors.

The plaintiff is entitled to judgment with costs.

[ONONDAGA GENERAL TERM, April 3, 1860. *Allen, Mullin* and *Morgan,* Justices.]