In the Matter of Kerwin H. Fulton, as Substituted Trustee under the Will of Alexander Clark, Deceased, Respondent.

Van Beuren and New York Billposting Company, Appellant.

488

(Argued September 28, 1931; decided November 24, 1931.)

*Richard T. Greene, Daniel S. Murphy* and *Edward E. Weadock* for appellant. Surplus of gains or profits beyond what would be necessary to keep good the liability to capital stock which has been issued, may in the discretion of a board of directors, be distributed amongst its stockholders as dividends and returns on their investment. The appraisers erred in adding to the value of

petitioner's preferred stock the sum representing an aliquot part of the surplus, consisting solely of undistributed earnings, all of which on distribution must go to the common stock. (*Hartley* v. *Pioneer Iron Works*, 181 N. Y. 73; *Rorke* v. *Thomas*, 56 N. Y. 559; *Equitable L. A. Soc.* v. *U. P. R. R. Co.*, 212 N. Y. 360; *Matter of Bridgewater Navigation Co.*, L. R. [1891] 2 Ch. Div. 317; *Birch* v. *Cropper*, 14 App. Cas. 549; *Lloyd* v. *Pennsylvania Electric Vehicle Co.*, 75 N. J. Eq. 263; *Niles* v. *Ludlow Valve Mfg. Co.*, 196 Fed. Rep. 994; 202 Fed. Rep. 141; 231 U. S. 748; *Continental Ins. Co.* v. *United States*, 259 U. S. 156.) There were no special circumstances to justify the appraisers in including the surplus in their appraisal. (*Russell* v. *American Gas & Electric Co.*, 152 App. Div. 136; *Stone* v. *U. S. Envelope Co.*, 111 Atl. Rep. 536; *Lyman* v. *Southern Ry. Co.*, 141 S. E. Rep. 240; *Brock* v. *Poor*, 216 N. Y. 387; *Butler* v. *New Keystone Copper Co.*, 93 Atl. Rep. 380; *Matter of Timmis*, 200 N. Y. 177; *H. & G. M. Co.* v. *H. & W. M. Co.*, 127 N. Y. 252; *Equitable L. A. Soc.* v. *U. P. R. R. Co.*, 212 N. Y. 360; *Matter of London India Rubber Co.*, L. R. 5 Eq. 519; *Gifford* v. *Thompson*, 115 Mass. 478; *People* v. *N. Y. Building Loan & Banking Co.*, 50 Mass. 23.)

*Lester L. Callan* for respondent. The petitioner is entitled to have as the value of his shares his aliquot or proportionate part of the net worth of the appellant corporation on the day of the dissent. (*Murrin* v. *Archbald Consolidated Coal Co.*, 196 App. Div. 107; 232 N. Y. 541; *Cole* v. *Wells*, 224 Mass. 504; *Matter of Erlanger*, 206 App. Div. 148; 237 N. Y. 159; *Continental Ins. Co.* v. *United States*, 259 U. S. 156.) In appraising the stock of a stockholder who dissents from a resolution to sell all the corporate assets, the stock should be valued as if the corporation were dissolved with respect to the shares of the dissenting stockholder. (*Matter of Timmis*, 200 N. Y. 177; *Matter of Drosness*, 187 App. Div. 425; *People*.

v. *Ballard*, 134 N. Y. 269; *Murrin* v. *Archbald Consolidated Coal Co.*, 232 N. Y. 541; *Elyton Land Co.* v. *Dowell*, 113 Ala. 177.) On the dissolution of a corporation the net assets are distributed to the preferred and common shareholders alike in accordance with their holdings unless there is an express provision in the certificate to the contrary. (*Continental Ins. Co.* v. *United States*, 259 U. S. 156; *Matter of London India Rubber Co.*, L. R. 5 Eq. 519; *Gifford* v. *Thompson*, 115 Mass. 478; *People* v. *New York Building Loan Banking Co.*, 50 Misc. Rep. 23.)

HUBBS, J. This is a proceeding to appraise the value of four hundred eighty-one shares of the preferred stock of Van Beuren and New York Billposting Company, under section 21 of the Stock Corporation Law (Cons. Laws, ch. 59).

All of the stockholders of the appellant corporation, except respondent, voted to sell and transfer all of its assets, including its good will, to another corporation. The respondent, who owned four hundred eighty-one shares of preferred stock, did not vote in favor of such sale. He commenced this proceeding under section 21 of the Stock Corporation Law to have the value of his stock appraised. The par value of his stock was one hundred dollars per share and it had never sold above par.

At the date of the respondent's dissent, there were outstanding two thousand four hundred seventy-one shares of six per cent preferred and two thousand four hundred seventy-one shares of common stock, all of the par value of one hundred dollars per share. The corporation had, therefore, capital stock outstanding totaling $494,200, all of which had been issued at par. It also had an accumulated surplus arising from undivided profits totaling $682,757.95. The appraisers fixed the value of the preferred stock at $238.15 per share. That figure was arrived at by dividing the sum of the surplus and capital stock issued, $1,176,957.95, by 4,942, the total number of shares issued, common and preferred. Thus

one-half of the surplus was allotted to the preferred stock.

If the method adopted by the appraisers was correct, it is quite apparent that the respondent, by dissenting and requiring an appraisal of his stock, thereby more than doubled the value of his stock which had never sold for more than par.

The method adopted by the appraisers was the method approved for the appraisal of preferred stock after a dissolution of a corporation in the case of *Continental Ins. Co.* v. *United States* (259 U. S. 156). We do not pass upon the question of the proper rule to be applied upon the distribution of surplus between common and preferred stock upon the dissolution of a corporation. The determination of that question is not involved in this case.

Under section 21 of the Stock Corporation Law, the duty of the appraisers is to " estimate and certify the value of such stock at the time of such dissent." We are required to determine the proper method of computing the " value " of each share of preferred stock on April 13, 1926, " the time of such dissent."

Proceedings to dissolve a stock corporation in this State are carefully regulated by statute, which prescribes in great detail all of the various steps in such proceeding. Article 7 of chapter 28, Laws of 1909, the General Corporation Law (Cons. Laws, ch. 23), regulates the proceedings for an involuntary dissolution and article 9 thereof applies to a voluntary dissolution. Section 185 of the statute, as amended (L. 1929, ch. 650), provides for the division of the surplus among the stockholders, after the payment of claims, " in accordance with their respective interests." Manifestly, their " respective interests " will depend upon the provisions of the certificate of incorporation and the wording of the stock certificates. In the absence of any provision giving a preference in the surplus to a particular class of stock, it has been decided that such surplus shall be distributed " upon principles of

equal justice and equity among all the stockholders."
(*James* v. *Woodruff*, 10 Paige, 541, 546; affd., 2 Den. 574.)

At the time of the distribution of a surplus upon dis-
solution, the directors of a corporation have ceased to
function. The title to the surplus has vested in a receiver.
The statute requires him to distribute it to the stock-
holders " in accordance with their respective interests."

This proceeding has no resemblance to an action or
proceeding to dissolve a corporation. It is a purely
statutory proceeding. The statute expressly provides for
the fixing of the value of the stock of a going concern,
as of the time of the dissent.

It has been said that a sale, not in the ordinary course
of business, by a corporation of a substantial part of its
business, " so integral as to be essential for the transaction
of its ordinary business " (*Matter of Timmis*, 200 N. Y.
177, 181), entitles dissenting stockholders to have their
stock appraised and paid for by the corporation. The
statement that such a sale constitutes a " practical disso-
lution " of a corporation has been used, not to indicate
that the corporation as such had ceased to exist but as a
justification for holding that such a sale could not be
made over the protest of dissenting stockholders without
giving them the right to have their stock appraised.

While the sale of the assets of a corporation changes
the character of the business of the vendor corporation,
and establishes the right of a dissenting stockholder to
have his stock appraised, it does not amount to an actual
dissolution.

*Matter of Timmis* (200 N. Y. 177) is a typical case. In
that case a substantial branch of the corporation's business
was sold, not in the ordinary course of business, and this
court decided that the dissenting stockholder was entitled
to have his stock appraised, not because the corporation
was dissolved, but because the stockholder could not be
compelled to continue as a stockholder in a substantially
different business. A reading of the opinion in that case

discloses that the corporation was not in fact dissolved or its business discontinued. It only discontinued one branch of its business and continued to carry on its other branches.

At common law, the assets of a corporation could not be sold without the consent of all stockholders. The right of two-thirds of the stockholders to require a sale is a privilege conferred by the Legislature. That privilege cannot be exercised to the detriment of the dissenting stockholders. To require them to accept less than a fair market price for their stock would be a distinct injury. It is true that there may be cases where the stock has a fictitious market price. To require the corporation in such cases to pay the market price of the stock owned by dissenting stockholders would work a hardship on the corporation and its remaining stockholders.

Under such circumstances the market quotations should be considered but not accepted as decisive of a fair market price. The market quotations at the time of the dissent may, in certain instances, reflect an expectation of increased value as a result of the proposed sale. A dissenting stockholder is not entitled to share in an enhanced value of stock due to the sale which he has opposed and from which he dissents. Market quotations are, therefore, to be considered only in so far as they reflect a reasonable basis for estimating market quotations which would probably have continued if a sale had not been made. The appraisers should consider the elements that tend to affect market quotations: the rate of dividends; the regularity with which they have been paid; the management and reputation of the company; its prospects for the future and all other circumstances which will aid them in estimating the future course of the stock in the market. After such consideration it may be reasonable to decide that the true market price of the stock, i. e., the quotations that would probably

prevail in the future, is not less than the quotations at the time of the dissent, and an award may be made based on such market quotations even though it would be greater than the book value or the value as estimated by experts.

The consideration of market quotations when they have been artificially enhanced will seldom be required upon an appraisal, for if there is an open unrestricted market in which dissenting stockholders can sell their stock at more than its actual value, they will, no doubt, do so. If, however, the directors of the corporation have so managed it as to depress the price of the stock in the open market, dissenting stockholders will naturally desire to secure for their stock its actual value by requiring an appraisal. (*Petry* v. *Harwood Electric Co.*, 280 Penn. St. 158.)

The payment of such actual value, even if more than the market quotation, is the price that must be paid by the corporation for the privilege of requiring a sale over the protest of the dissenting stockholders who in effect are being ousted from the corporation.

The purpose of the statute being to save the dissenting stockholder from loss by reason of the change in the nature of the business, he is entitled to receive the value of his stock for sale or its value for investment.

No rule can be laid down for determining the actual or true value of stock of a given class except one of a very general nature and which may, in a particular case, be inapplicable because of varying provisions contained in the charter or by-laws of the corporation or because of the existence of a state of facts peculiar to the situation involved in the particular case.

In addition to the aliquot value of the share of the applicable assets, which is the only factor to consider under the facts in this case, and market quotations, other elements should be considered by the appraisers. Those elements will necessarily vary in different cases and it is not practical to attempt to state every circum-

stance which may properly influence appraisers in fixing the value of such stock.

It will be readily appreciated that the appraisers should have considered the investment value of the stock which is largely determined by the rate of return, the security afforded that the dividends will be regularly paid, the possibility that dividends will be increased or diminished, the selling price of stocks of like character, the amount of preferred stock in comparison with the common stock, the size of the accumulated surplus applicable to the payment of dividends, the record of the corporation and its prospects for the future.

The appraisers in estimating the fair value of the stock being appraised should give such consideration as to them seems proper to each factor which might enter into such value, and their report as to value should be reasonable and in accordance with the facts proven.

In the case at bar the directors had not ceased to function. The corporation was a going concern. The surplus, consisting of accumulated profits, was still subject to distribution among the common stockholders. True, the corporation had voted to go out of the active business in which it had been engaged and to turn over its assets to another corporation, and to receive therefor stock in the purchasing company, but the relation of the non-dissenting stockholders to the vendor corporation remained unchanged. Under the proposed transfer, the stock of the purchasing company received in exchange was to become assets of the selling company and held by its directors in place of the assets which had been transferred. There is no apparent reason why the directors could not vote that part of the stock acquired in exchange for the surplus profits of the corporation as a stock dividend to the holders of the common stock, or sell such stock and distribute the proceeds as a cash dividend to the common stockholders. The holders of the preferred stock had no interest in such surplus except the preference given

by the terms of the certificate of incorporation, which gives a preference as to dividends only.

The appraisers were mistaken in assuming that the dissenting stockholder was entitled to an aliquot part of the surplus earnings of the company and in apportioning the same to his preferred stock. The result was to give an unreal and fanciful value to his preferred stock, and to work an injustice to the common stockholders and to the holders of the remaining preferred stock. As there was no established market for the preferred stock, the respondent was entitled to receive the actual value of his stock. The figures used by the appellant showing the condition of the corporation were all taken from its last balance sheet and are conceded to be correct. The correct method of computing the value of the preferred stock under the conceded facts is comparatively simple. The capital stock account was made up of the amount paid for the stock when issued at par, *i. e.*, $494,200. That amount divided by the number of shares issued equals the value of each share of preferred stock, the value at which it should have been appraised under the facts in this case. It happens to be the exact amount paid for the stock when issued.

The result that the dissenting preferred stockholder is entitled to receive for his preferred stock the exact amount paid occurs because the corporation commenced business without any surplus and each stockholder paid par for his stock when issued.

The cases relied upon by the respondent do not hold anything contra to the conclusion which we have reached. *Continental Ins. Co.* v. *United States (supra)* involved the construction of a certificate of incorporation which by its terms defined the rights of holders of preferred stock. The court decided that the holders of such stock were entitled to share in the surplus at the conclusion of an action to dissolve the corporation. The dicta contained in the case of *Cole* v. *Wells* (224 Mass. 504) states

the rule applicable upon the distribution of a surplus among owners of common stock, and has no application to a case where a surplus is to be distributed in a statutory proceeding where there is outstanding stock, both common and preferred.

It will be unnecessary to remit the proceeding for a reappraisal as the parties are in substantial agreement that the value of the preferred stock is its par value of $100 per share provided the dissenting holder of preferred stock is not entitled to share in the surplus.

The order should be modified by reducing the amount to be paid by the appellant for the four hundred eighty-one shares of preferred stock owned by the respondent from the sum of $114,515.50 to $48,100, and as modified affirmed, without costs.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Ordered accordingly.