In the Matter of the Application of Robert Goelet and Others, Stockholders in the Metropolitan Opera and Real Estate Company, for the Appointment of Appraisers to Appraise the Value of the Stock Owned by Each of Them, Petitioners, Appellants.

Metropolitan Opera and Real Estate Company, Respondent.

Orders affirmed, with costs and disbursements to the respondent. No opinion.

Present — Martin, P. J., Untermyer, Dore, Cohn and Callahan, JJ.; Callahan, J., dissents; dissenting opinion by Callahan, J.

CALLAHAN, J. (dissenting). I dissent and vote to modify the order adopting the report and the supplemental report of the majority of the appraisers, and to modify the report, so as to fix the value of the petitioners' stock as $102 a share, with interest from May 28, 1940.

The essential issue involved herein is the value of the stock of Metropolitan Opera and Real Estate Company. Two of three appraisers appointed by the court, pursuant to the provisions of section 21 of the Stock Corporation Law, fixed the value of certain dissenting stockholders' stock at seventy-five dollars per share. Those stockholders appeal.

Section 21 of the Stock Corporation Law requires that the value of petitioners' stock be fixed as of a date just prior to the taking of the action to which the dissenting stockholders object. The action objected to here was the granting of an option for the purchase of the real estate held by the corporation. That option was exercised by the purchaser on May 28, 1940, so that the value was fixed as of May 27, 1940.

The objects of the real estate company were to encourage opera, and to maintain a building for that purpose. From 1893 to 1940 the company owned the block between Thirty-ninth street and Fortieth street, on Broadway and Seventh avenue, known as the " Opera House Block," and a smaller parcel used as a warehouse for scenery. The Opera House Block was assessed for tax purposes at $5,400,000, and the warehouse at $185,000. The stockholders of the real estate company had agreed to pay stock assessments, finally reaching the sum of fifteen dollars a share per annum, and in return for this they had the right to use certain partierre boxes at all performances of opera without paying any admission fee. The sums so assessed against the stockholders were used to finance the production of grand opera.

I cannot agree with the respondent's contention that, because the value was fixed as of May 27, 1940, before the purchaser exercised its option, petitioners' stock was to be valued as if it were to be perpetually burdened by the obligation to meet the stock assessments referred to. The possibility of a sale of the real property, free of that burden, was always present. Two-thirds of the stockholders might sell the property at any time either for commercial purposes, or for the continuation of opera without subsidy. In fact, the latter step was actually taken upon the exercise of the option granted in the present case. To ignore such salability was to ignore realities.

Matter of Fulton (257 N. Y. 487) does not hold anything contrary to the view here expressed. While the decision referred to does indicate the general rule to be that stock is to be valued as if the corporation was a going concern, it must be remembered that there the rights of a holder of preferred stock in an active mercantile concern was involved. The stockholder was attempting to˙ get a return far beyond the market worth of his stock by having the transfer of a going corporate business to another company treated as a dissolution of the corporation, so as to get him a share of an existing surplus, which surplus would never be distributed to a holder of preferred stock under ordinary circumstances. Matter of Fulton (supra) does not require us to hold that, under the present peculiar circum-

stances, the holder of common stock in a real estate holding company which owned an opera house must have his stock valued as if that use, burdened with assessments, must continue forever. Indeed, if that was to be the basis for fixing value, the stock involved herein would have had no monetary value.

As the stockholders had the potential right to relieve the stock of the burden of subsidy referred to, and the power to realize on the underlying real estate, this gave an intrinsic value to the stock which was required to be measured at or about the time of a proposed sale by the sum that could have been realized on the underlying real estate, less the amount of the liens thereon.

There does not seem to be any question in the present case but that the underlying real estate was worth, at a minimum, $1,970,000. It was being sold for that price to an opera producing company on May 28, 1940. It would probably have brought more if sold for commercial purposes. There was ample testimony to that effect. Even the respondent's experts valued it at approximately the figure of $1,970,000. In addition, the corporation had $59,003 in cash.

In order to determine the value of petitioners' stock, it would be necessary, in reflecting the value that the equity referred to gave to the stock, to make some deduction from the value of the equity, due to the fact that whatever amount could be obtained on a sale of the real estate would probably involve the taking of a second mortgage for a portion of the purchase price. A sale for less than all cash is the usual thing in the sales of real estate in the city of New York. Such terms existed in the very sale under the option objected to. The amount of the purchase-money mortgage would be approximately $1,000,000 in the ordinary sale, as it was in the sale that actually took place. Being a second mortgage on an opera house (and a first mortgage on a warehouse), it would have to be considerably discounted in order to reflect the cash value that it gave to the corporate stock. If we consider all the circumstances present, including the sales value of the underlying real estate, the amount and terms of the first mortgage, the terms which would be necessary in a second mortgage, the market conditions in 1940, and all the other relevant factors, a discount of fifty per centum of the $1,000,000 second mortgage would seem ample. Thus computed the intrinsic worth of the company's underlying assets as reflected in the value of the stock would not be less than $1,059,003, giving a value of $102 to each of the 10,350 shares of stock.

While I have no way of determining the precise method followed by the majority of the appraisers in fixing the value of seventy-five dollars, I think it is apparent that whatever method they adopted they arrived at an erroneous determination, because they found less than the minimum value warranted by the evidence.

I vote to modify the orders and the reports accordingly.