In the Matter of HAZEL MARCUS, Petitioner. R. H. MACY & Co., INC., Respondent.

Supreme Court, Special Term, New York County, February 9, 1948.

*Leon Lauterstein* and *Jacob L. Isaacs* for respondent.

*William Rosenfeld* for petitioner.

GREENBERG, J. The petitioner, Hazel Marcus, is the owner of fifty shares of common stock of the respondent R. H. Macy & Co., Inc. The board of directors of that company approved a proposal to amend the terms of the preferred stock so as to give the holders thereof one vote per share upon corporate matters generally. The stockholders approved the proposed amendment by a vote of 1,332,408 out of a total vote of 1,362,271. The petitioner objected to the proposed change and alone of the common stockholders, has demanded an appraisal of her stock pursuant to sections 21 and 38 of the Stock Corporation Law.

She petitioned the court for the appointment of appraisers. The respondent opposed the application on various grounds. It was successful at Special Term and in the Appellate Division (270 App. Div. 934) but the Court of Appeals (297 N. Y. 38) reversed the order and granted the relief to petitioner.

Thereafter the appraisal proceeding was commenced. In preparation therefor the petitioner served a subpœna duces tecum upon respondent, directing it to produce voluminous books, records, papers and documents embracing not only its operation of the principal store of Macy & Co. but its many subsidiaries. Testimony was offered by the respondent with respect to the fair market value of petitioner's stock. The petitioner refused to go forward with the cross-examination. She claimed that the respondent did not comply with the sub-

poena duces tecum and that, therefore, she was not adequately prepared.

The respondent thereupon made this motion to vacate the subpoena and for the issuance by the court of instructions to the appraisers: (1) that "net asset value" is not a proper standard for the determination of the value of petitioner's shares of common stock, and (2) that the appraisers shall not take evidence of or evaluate the physical assets of the respondent and its subsidiaries for the purpose of determining the value of said stock.

Respondent contends that the evidence heretofore taken by the appraisers establishes clearly that the stock in question has been listed on the New York Stock Exchange since April, 1922, and that the amount of trading in this stock has been so great as to preclude any contention that the market in the stock was not fair and open. Respondent also maintains that the evidence demonstrates beyond question that the market was completely normal and was not subject to any unusual pressures or fluctuations  In view of these circumstances it is urged that the appraisers are bound to fix the value of petitioner's stock at the market value thereof on April 30, 1945, the appraisal date, and that they may not consider any other criteria of value. Accordingly, it is argued that the subpoena duces tecum, which calls for the production of voluminous books, papers, documents and reports for the purpose of establishing net asset value, should be vacated and the appraisers directed not to consider the net asset value or take any evidence bearing upon such value.

The petitioner urges specifically that she cannot safely proceed with the appraisal proceeding because (1) the market value is not the only value that the appraisers may take into consideration in evaluating her stock, and (2) she is not able to controvert such evidence as has already been offered by the respondent unless and until she has had a full, complete and adequate examination of the books, papers and documents of the respondent required to be produced by the subpoena duces tecum.

A clear-cut issue is therefore presented for determination by this court, namely, what is the criterion that should be adopted by the appraisers in fixing the value of petitioner's stock. Is it fair market value or net asset value, or both plus whatever other factors the appraisers determine to consider in arriving at the proper value of the petitioner's stock on the critical date? There has been considerable legal literature on the issue at hand. Most of the decisions cited by the respondent arise in

other jurisdictions. There are, however, a number of recent decisions of the courts of this State which deal with the subject of the criteria of value to be considered by appraisers of corporate stock.

In *Matter of Fulton* (257 N. Y. 487) the Court of Appeals declared (pp. 494–495):

" In addition to the aliquot value of the share of the applicable assets, which is the only factor to consider under the facts in this case, and market quotations, other elements should be considered by the appraisers. Those elements will necessarily vary in different cases and it is not practical to attempt to state every circumstance which may properly influence appraisers in fixing the value of such stock.

" It will be readily appreciated that the appraisers should have considered the investment value of the stock  *  *  *. The appraisers in estimating the fair value of the stock being appraised should give such consideration as to them seems proper to each factor which might enter into such value ". In that case there was, however, no established market for the stock being appraised (p. 496). The statement (p. 496) that " As there was no established market for the preferred stock, the respondent was entitled to receive the actual value of his stock " may indicate that the holding that the appraisers were to consider net asset value and investment value was predicated solely upon the absence of appropriate market value.

In *Jones* v. *Healy* (184 Misc. 923, affd. 270 App. Div. 895, motion for leave to appeal denied 296 N. Y. 1058) Mr. Justice PECK, now Presiding Justice of the Appellate Division in this Department, stated (p. 936) that " There is good authority to the effect that market value, where it fairly reflects the opinion of informed buyers and sellers, is the best evidence of value for all purposes " except where " market prices may be a reflection of unusual conditions or ' moods ', artificial enhancement or depression, or the market may be too thin to be taken as representative of informed opinion or intrinsic value." In that case, however, the company whose shares were being appraised was an *investment trust* which the court distinguished from *industrials,* for appraisal purposes, in the following language (pp. 936–937): " Market prices are particularly significant in the case of investment trust shares. The complicated considerations of operating factors which enter into the valuation of industrials do not apply, or at least not nearly to the same extent. The periodically published statements tell the whole story and any appraisal is simply a long range opinion of the

trust's portfolio and of what the management may do with it. Such an opinion is peculiarly a matter of investor's judgment and is almost entirely a consideration of market factors. The market's evaluation of investment trust stocks is, therefore, entitled to particular weight.'' It is to be observed that the above-quoted language suggests that in the case of industrials, market prices of the stock may not be entitled to exclusive consideration. It is also to be noted that in *Jones* v. *Healy* (*supra*) the appraisal had already been made prior to the time that the correctness thereof was submitted to the court and that the appraisers had considered other criteria of value in addition to market quotations for the stock. In fact, they had appraised the stock at $1 per share more than its market value. Notwithstanding the court's language above referred to as to the particular weight to be given to market prices in the case of investment trust shares, the court did not exclude asset value from consideration (p. 937): '' What weight then should be given asset value? The court cannot say, in the light of the fairly constant discount of asset value which has been established for investment trust shares, and with the market in Adams true to the pattern, that an allowance of $1 is not sufficient recognition of the factor of net asset value over market value.''

In *Matter of Behrens* (61 N. Y. S. 2d 179, affd. 271 App. Div. 1007) the question of the proper method of appraising shares of an *industrial* corporation was considered by Mr. Justice PECK. The following language of his opinion is relied upon by petitioner as indicating that although market value in the case of a fair and open market, unaffected by unusual conditions, is entitled to very great weight, the factors of net asset value and investment value must also be considered (p. 182):

'' While there is no legal formula which can be enunciated or applied in valuation proceedings, the appraisal remaining a matter of judgment on the facts in each case, the Court can reiterate accepted principles which, simply stated, are that the appraisal should take account of market value, investment value, and net asset value. *Matter of Fulton,* 257 N. Y. 487, 494, 495, 178 N. E. 766, 768, 769, 79 A. L. R. 608. The weight to be attached to each factor will naturally vary in accordance with the facts of each case, but appraisers should take account of all these factors, and should not exclude any one from consideration in favor of placing complete reliance upon any other.

'' The weight to be given market value is obviously related to the nature and extent of the market in the stock and to how truly and fairly it reflects the judgment of informed buyers and

sellers. Thus a wide market on an established exchange under normal conditions is entitled to great and probably controlling weight. A narrow or spasmodic market over-the-counter, or a market which is subjected to abnormal influences one way or the other, is not entitled to much weight. In any event, market prices are entitled to a weight in keeping with their significance as meeting points of those actually engaged in buying and selling a stock.

" Net asset value is entitled to weight, but it must be remembered that an appraisal is not a liquidation, and that the stock must be appraised on a going concern basis (*Matter of Fulton,* 257 N. Y. 487, 492, 178 N. E. 766, 768, 79 A. L. R. 608) with the possibility in different cases that the value of the stock may be substantially above or below net asset or break-up value. * * * The nature of the business, the nature of the assets, their liquidity and profitable use, are factors bearing upon the weight to be given to net asset value.

" Besides market value and net asset value, there is investment value, which is not subject to nice definition or determination, but takes account of such factors as the capitalization of the company, earnings and dividend record, position in the industry, prospects of the business and the industry, and the over-all value of its securities in relation to general market conditions and the market values of comparable securities. *Matter of Fulton,* 257 N. Y. 487, 495, 178 N. E. 766, 769, 79 A. L. R. 608. Naturally, such comparative market value would enter into any objective determination of value, because prospective buyers or sellers of a stock will test its value against other available investments. It is sometimes said that value is the price on which a willing and informed buyer and seller, neither under compulsion to trade, would meet. That is another way of expressing investment or objective value."

It is to be borne in mind, however, that the stock involved in *Matter of Behrens* (*supra*) was not listed on any exchange, although the preferred stock was the subject of " a fairly active over-the-counter market " (p. 182). The following language of the court (p. 184) tends to indicate that if there had been a broad, fair and open market, unaffected by abnormal conditions, the appraisal value of the stock would have been determined by its market value without consideration of other criteria: " While the nature of the market in the stock was not such as to justify placing exclusive reliance upon it for valuation purposes, the market was sufficient to indicate that those who were interested and engaged in buying and selling the stock did

not attach any value to its approaching net asset value. The Court agrees with the observation made by the appraisers that the market here was too narrow and restricted to serve as a reliable yardstick for measuring value, but thinks that the market was sufficiently broad and indicative of trader opinion to be entitled to some weight.''

Even if market value in the case of a fair, open and broad market, unaffected by exceptional influences, is ordinarily the exclusive criterion to be considered by appraisers, it does not necessarily follow that petitioner's subpoena duces tecum should be vacated. Petitioner urges that the market quotations of the stock are necessarily based upon the published statements of financial condition and earnings and that she is entitled to an opportunity to investigate and ascertain whether the company's published statements and books of account do not grossly undervalue its assets, particularly in view of the inflationary conditions existing at the appraisal date. It is contended that if Macy's assets had been carried on the books at their true values, the market prices for the stock would have been substantially higher than they were.

The question here presented is, therefore, whether a stockholder exercising his statutory right to an appraisal is precluded from endeavoring to adduce evidence before the appraisers that the true value of the assets of the corporation is substantially greater than the valuations of the assets in the company's books and published statements and that, therefore, the market quotations for the stock, necessarily predicated upon the company's inadequate valuations, do not represent the fair value of the stock which is the subject of the appraisal. In the court's opinion this question must be answered in favor of the stockholder. It may not be held as a matter of law that a company's valuations of its assets in its books and published statements are conclusive upon its stockholders in an appraisal proceeding. Nor may it be held that a stockholder may inquire into the correctness of the company's valuations only on proof that they are substantially incorrect and inadequate, for the facts are exclusively within the knowledge of the company and the stockholder could only in a rare case be expected to possess such proof.

It is unfortunate that in the instant case compliance by the company with the subpoena duces tecum may subject it to expenses wholly out of proportion to the value of the stock to be appraised. As the Court of Appeals observed on the prior appeal in this very proceeding (*Matter of Marcus* [*Macy & Co.*],

297 N. Y. 38, *supra*), at page 44: " it is enough to say that the Legislature has clearly prescribed the conditions under which a nonconsenting stockholder may have his stock evaluated and enforce payment therefor." The court held that the alleged bad faith of the stockholder was immaterial, the statute having given a dissenting stockholder an absolute right to an appraisal of his stock.

However, the subpœna duces tecum is so broad and so comprehensive that if it were complied with *in toto* it would not only be unnecessarily burdensome but would furnish petitioner with a good deal of matter which would not be helpful to her in establishing the value of the stock even on her theory. Accordingly, the subpœna will be limited by directing the respondent to produce its: (1) books, records and ledgers used in connection with the preparation of statements of financial condition contained in the annual report for the fiscal year ended July 28, 1945; (2) books, records and ledgers used in the preparation of reports of financial condition as of or reflecting condition or value as of October 30, 1945; (3) real estate ledgers containing records of acquisition of real estate and additions thereto and improvements thereon; (4) appraisal reports prepared or received with respect to such real estate; (5) investment ledger as of October 30, 1945; (6) fixed asset ledger containing records of furniture, fixtures and other fixed assets; (7) appraisal reports received by respondent, R. H. Macy & Co., Inc., of the value of corporations acquired by it.

Respondent's motion is accordingly disposed of as indicated in this opinion. Settle order.