In the Matter of HAZEL MARCUS, Respondent.   R. H. MACY & Co., INC., Appellant.

First Department, May 24, 1948.

*Leon Lauterstein* of counsel (*Jacob L. Isaacs* with him on the brief; *Lauterstein, Spiller & Brown,* attorneys), for appellant.

*William Rosenfeld* for respondent.

PECK, P. J. This is a proceeding under section 21 of the Stock Corporation Law for the appraisal of fifty shares of common stock of R. H. Macy & Co., Inc., owned by petitioner, who was the sole dissenter from a resolution adopted by the vote of 1,332,408 shares, amending the certificate of incorporation to give voting rights to preferred stockholders. The stockholders' meeting at which the amendment was adopted was held on October 30, 1945, making that the appraisal date. Macy stock sold on the New York Stock Exchange on that date at a low of 43⅛ and high of 43¾, which would give petitioner's 50 shares a market value of about $2,175. It is not denied that petitioner has asked $20,000 for this stock.

Apparently with the purpose of making the proceeding as elaborate and expensive for the company as possible, and with the hope of exacting a correspondingly high price in settlement, petitioner served the company with a subpœna calling for the production of all the books, records and working papers of the company and each of its subsidiaries relating to their financial condition, physical inventory and fixed assets as of the appraisal date, and had included in the order appointing the appraisers a provision that the appraisers should select a certified public accountant to prepare an audit as part of the expenses of the appraisal. Petitioner's avowed purpose was to inquire into the value of all the underlying assets of the company and its subsidiaries, operating department stores in New York, New Jersey, Ohio, Georgia and California.

The company moved (1) to vacate the subpœna and for an order instructing the appraisers that " net asset value " is not a proper standard for determining the value of petitioner's shares and that the appraisers should not evaluate the physical assets of the company and its subsidiaries to determine the value of petitioner's stock, and (2) to strike from the order appointing the appraisers the provision for their engagement of an accountant to make an audit. From a denial of its motions, the company appeals.

The question presented by these appeals is whether it is proper to make a valuation of all the assets of the company and its subsidiaries as a means of determining the value of petitioner's fifty shares of common stock, or whether it is sufficient for the purpose to take the market value of the stock or make a valuation based on known factors, such as market value, book value, earnings, dividends and business conditions, without attempting a physical inventory and appraisal or audit.

The briefs remind us of the various factors enumerated in the decisions which should be taken into consideration in determining the value of stock. All of the decisions emphasize, however, that it is the facts of the particular case which determine the factors to be considered and the weight to be given them, and that market value is the controlling consideration where there is a free and open market and the volume of transactions and conditions make the market a fair reflection of the judgment of the buying and selling public. Nearly all the cases in which other factors have been given much weight have been cases where the market was not sufficiently broad or established to be accepted as representative. It is most pertinent, therefore, to contemplate the market in Macy's stock at and about the appraisal date.

Taking a period of six months from August 1, 1945, to January 31, 1946, including three months before and three months after the appraisal date, we find that several hundred shares were traded nearly every day and that the daily average was approximately 700 shares. The market had a spread over this period from a low of thirty-five to a high of fifty-one. While there was an upward trend in keeping with the course of the market generally during this period, there were no notable fluctuations, and the market appears to have been a normal one in every way. The volume and action of the market around the appraisal date seem to be in keeping with the broader picture. In fact, the market appears to be the kind of market which warrants and requires that it be given full recognition.

Petitioner does not suggest any infirmity in the market. The breadth of the market is not challenged as insufficient to be representative of the opinion of those interested in buying and selling the stock. It is not suggested that the market was subject to any abnormal condition or influence to impair its validity as a normal market. All that petitioner says on this score is that market prices for a corporate stock are in large part a reflection of the statements published by the corporation, that inaccuracies in the corporation's published statements of conditions and earnings will result in inaccurate market valuations, and that petitioner is entitled to prove that the corporation's published statements do not accurately reflect its value, especially in view of the inflationary conditions existing in 1945. Indeed, the only inaccuracy suggested as likely is that in carrying fixed assets at cost and inventories at the lower of cost or market, in accordance with accepted and sound accounting practice, the company may have undervalued its assets in the light of inflationary conditions. It is on this possibility that petitioner seeks to turn the appraisal of her fifty shares of stock into an appraisal of the underlying assets of the corporation and its subsidiaries.

We agree with the holding at Special Term that it may not be held as a matter of law that a company's valuation of its assets in its books and published statements is conclusive upon its stockholders in an appraisal proceeding. It does not follow, however, that a dissenting stockholder, pursuing his appraisal rights, may require the production at the appraisal proceedings of all the company's books, records and working papers to have the appraisers make what would amount to a revaluation of the company's assets. In the first place, whatever consideration and weight might properly be given to net asset value under certain circumstances, it is clear that net asset value is not the

basis, if it is any substantial consideration, in determining the value of the stock of a department store or other industrial as a going concern. The assets are committed to the operation of the business, and inventories are constantly shifting by the process of sale and replacement, and any number of factors besides the naked value of physical assets will determine the success or failure of operations and consequent value, above or below net asset value, of the business. In the second place, net asset value, to the extent that it may be considered in this case, does not require or warrant a detailed revaluation of assets by the appraisers.

An appraisal proceeding should be kept within reasonable bounds depending upon the requirements of the particular case. An appraisal need not be an exhaustive excursion into every conceivable angle. It must be objectively fair, and if it is that by the most pertinent objective standards there is no occasion for a more extended investigation. A due sense of proportion must be observed, lest the expense of the appraisal be inordinately costly and the right and machinery of appraisal be abused.

We need not be unmindful of the fact here that out of 1,650,000 shares outstanding, only this petitioner, with fifty shares, has objected to the corporate action taken by the stockholders and sought an appraisal, and that her tactics in the appraisal proceeding seem to be of a piece with her demand for payment of tenfold the open market value of her stock. While the appraisal statute does not take account of the number of shares involved, or make good faith a requisite of the right to an appraisal (*Matter of Marcus* [*Macy & Co.*], 297 N. Y. 38), the court is not required to blind itself to reality and permit the proceeding to go beyond what is necessary to award petitioner fair value for her stock and become a device for obtaining more than fair value.

The administration of an appraisal proceeding is to be kept to its statutory purpose of protecting a dissenting stockholder's legitimate interests. Consistent with that purpose, the legitimate interests of the company and its other stockholders should be protected by keeping the proceeding within reasonable bounds and avoiding all unnecessary expense and burden upon the parties.

In this connection, some specific comment on what is alleged to be the occasion for the projected inquiry in this case might be helpful. As fixed assets were carried on the books and financial statements at cost and inventory at the lower of cost or

market, in accordance with recognized accounting practice, market traders and investors were as fully and accurately informed as to the condition of the company as is customary through financial statements. Undoubtedly all persons familiar with the market, financial statements and economic conditions knew of what petitioner describes as the " inflationary conditions " existing at the time and could make such allowance for them as seemed warranted in their judgment in valuing the stock. The same consideration would apply to practically every company whose stock is listed on the stock exchange. It can hardly be said that the carrying of assets by all these companies at cost or the lower of cost or market, pursuant to a general practice, impairs in any way the soundness of their financial statements or induces a market valuation different from what it otherwise would or should be. It may be noted that Macy stock was selling in the market on the appraisal date at sixteen points or 60% above its book value, indicating that a liberal allowance was made by the traders for values over and above book values.

Even if asset values are higher at a particular time than the figures at which they are carried, that fact is not too significant for stock appraisal purposes. It is the stock of a going concern which is being appraised and not its assets on liquidation. Fixed assets are committed for their economic life and fluctuations in inventory values are spread over a continuing period of sale and replacement. An inflationary or deflationary trend or spiral will undoubtedly influence sales, prices, profits and stock values, but it is just such factors which are being constantly appraised and valued by those who are buying and selling in the market. There is no reason to think from anything which appears in this case that a more academic appraisal of the stock in this proceeding would be a closer approach to true value than the practical judgment of those most interested in the company and its stock, the daily traders who are backing their judgment with their money.

This does not mean that the appraisers are confined to market value or must accept market value as the value of this stock. There are sufficient other factors here which meet the eye which may be considered and by which market value may be tested. There are earnings which over a period of years averaged about $2.50 a share, but seemed to be on the increase, and dividends which averaged about $2 a share. There was the book value of the stock at the end of the fiscal year ending July 28, 1945, of $27.65 a share, which may be subject to the comment and criticism which petitioner makes, but which apparently was not

regarded by market traders and should not be regarded as of major importance in valuing this stock. If the appraisers think it worth while to observe the possible difference between book values and current values at the appraisal date, they may sufficiently make the observation on the basis of general knowledge and testimony without any detailed checking of fixed assets and inventory valuations. The appraisers may also consider the market value of comparable securities and test the market value of Macy stock by the market values of other companies in the department store field.

There is no occasion, as the matter stands, for the company to produce before the appraisers the records required by the subpœna and no need for the appraisers to engage an accountant. A fair and adequate appraisal may be made of the value of petitioner's stock on the basis of readily available information and data without resort to the kind of inquiry petitioner would make. The company undoubtedly has some general idea of the amount or percentage by which land, building and inventory values current as of October 30, 1945, may have exceeded book values as of that time, and such general information can be given to petitioner and can be submitted in testimony. If the appraisers then think some more particular information is required, they may ask for it. It would seem, however, that any inquiry along this line is of very limited pertinency, and should be sparingly pursued, in view of the nature and purpose of the appraisal and the more relevant criteria of value which are available.

The order denying appellant's motion to vacate the subpœna duces tecum should be reversed, with $10 costs and disbursements to the appellant and the motion granted. The order appointing appraisers should be modified to eliminate the provision for the selection of an accountant by the appraisers, and as so modified affirmed, with $10 costs and disbursements to the appellant.

GLENNON, COHN, CALLAHAN and SHIENTAG, JJ., concur.

Order denying appellant's motion to vacate subpœna duces tecum unanimously reversed, with $10 costs and disbursements to the appellant and the motion granted. Order appointing appraisers unanimously modified to eliminate the provision for the selection of an accountant by the appraisers and as so modified affirmed, with $10 costs and disbursements to the appellant. Settle orders on notice.