Saul S. Streit, J.
This is a motion by respondents for confirmation of the report of an appraiser appointed by this court (17 Misc 2d 467), and for incidental relief, including an allowance to the appraiser and an allowance of the reasonable compensa *721 tion of experts retained by respondents. Petitioner corporation cross-moves for a change of venue to Otsego County, or, in the alternative, for an order (1) modifying the appraiser’s report by reducing the valuation of respondent’s stock from the $1,100,000 found by the appraiser, to not more than $8,000, or else rejecting the appraisal entirely, (2) modifying the appraiser’s finding that respondents own one third of the outstanding stock of petitioner, and (3) striking certain allegations from the answer as sham, frivolous, irrelevant, etc.
To the extent that petitioner seeks a change of venue, the cross motion is denied. The claim that petitioner cannot obtain a fair decision from this court, because of the standing and prestige of the respondents and of the father of one of them, is wholly devoid of merit. Furthermore, the venue of this proceeding was selected by petitioner itself, in March, 1959, almost two years ago. No claim is made that the alleged facts upon which the application for a change of venue is predicated were not known to petitioner at that time, or that they have only become known to petitioner since the filing of the appraiser’s report. Moreover, petitioner’s counsel proceeded to argue the merits of the motion and cross motion without even mentioning the application for a change of venue, thereby waiving the request for a change of venue theretofore made in the motion papers.
Petitioner contends that the issue, as to whether respondents owned one third or one eighth of its validly outstanding shares of common stock, was improperly left to the appraiser for determination. It was, however, petitioner itself which suggested that said issue was one which could properly be left to the appraiser. The affidavit of petitioner’s president, Conole, sworn to April 7, 1959, submitted on behalf of petitioner, in April, 1959, stated that “ This issue is raised and denied in the pleading in this proceeding and is a matter that the appraiser or the court in this proceeding, can consider ’ ’. On the argument of the present motion and cross motion, petitioner’s counsel urged that jurisdiction to determine the issue could not validly be conferred upon the appraiser even by consent. It is unnecessary, however, to consider the merits of this contention, for even if the court should disregard the appraiser’s finding on that issue and should itself determine the question de novo, the conclusion that respondents owned one third of the validly outstanding stock is inescapable, as a matter of law.
The issuance of the 5,000 disputed shares purported to be authorized by the board of directors at a directors’ meeting held on February 19, 1958. Prior to the meeting, Howe, one of the three directors, had resigned. The meeting was attended *722 by only one of the two remaining directors, Conole. Section 2 of article 2 of the by-laws provides that vacancies in the board of directors “shall be filled # * * by a majority vote of the remaining directors, at any regular meeting or at any special meeting called for that purpose, if a quorum is present, otherwise by vote of the stockholders ” (italics supplied). Notwithstanding this provision, Conole, at the directors’ meeting on February 19, 1958, assumed to elect one Speers as director to fill the vacancy caused by Howe’s resignation. As there were two directors remaining after Howe’s resignation, Conole’s vote did not represent “ a majority vote of the remaining directors ”, and Speers was, therefore, not validly elected as a director. Petitioner’s reliance upon section 6 of article 2 of the by-laws is misplaced. That section deals only with the question of how many directors are necessary to constitute a quorum. The section is headed “ Quorum ”. Its first sentence specifies the number of directors necessary to make up a quorum for purposes other than the filling of vacancies in the board, and the second sentence specifies the number necessary to constitute a quorum for the purpose of filling vacancies. Section 2, however, imposes two requirements: (1) that there be a quorum at the meeting, and (2) that the votes of a majority of the remaining directors be obtained. Even if it be assumed that Conole alone could constitute a quorum, it is indisputable that the additional requirement that a vacancy be filled by the votes of a majority of the remaining directors was not complied with. It follows that the approval, at the meeting, of the issuance of the 5,000 shares to Conole and Crandall did not constitute approval by the board of directors and was as invalid as was Speers’ purported election to fill the vacancy. Speers’ election and the approval of the issuance of the 5,000 shares were not merely voidable, as petitioner urges. They were absolutely void.
On April 16, 1958, the pre-emptive right of all stockholders to share in unissued stock became effective (Stock Corporation Law, § 39, subd. 4, par. [d]). At that time, the 5,000 shares had not been validly issued. The ratification of the issuance of the 5,000 shares, by Conole and Crandall, at a stockholders’ meeting held on December 26,1958, could not retroactively make the issuance date of the shares precede April 16, 1958, the time when pre-emptive rights to unissued stock came into being. A contrary conclusion could lead to emasculation of the statutory intent that pre-emptive rights attach two years after incorporation, in the absence of a contrary provision in the certificate of incorporation.
*723 Since the 5,000 shares were not validly issued the appraiser properly found that respondents, holding 1,000 of the 3,000 shares validly outstanding, owned one third of the equity for the purposes of the appraisal.
In view of the conclusion reached, it is unnecessary to consider whether one director can legally constitute a quorum (the appraiser found he could not, citing Mitchell v. Forest City Print. Co., 107 Misc. 709, affd. 187 App. Div. 743), or whether, as the appraiser also found, the attempted approval of the issuance of the 5,000 shares violated the by-laws because the notice of meeting did not apprise the directors that such business would be transacted. It is also needless to consider whether the ratification above referred to was void, as found by the appraiser, because Conole and Crandall were self-interested in the result and violated the rights of the minority stockholders. The contention that the validity of the election of Speers could only be determined in a proceeding under section 25 of the General Corporation Law is without merit. That remedy is not exclusive, not to mention the fact that at the time of the institution of this proceeding the right to invoke the remedy no longer existed, by reason of the fact that Speers’ election had been confirmed by majority action of the stockholders on December 26,1958.
We now turn to petitioner’s claim that the appraiser’s valuation of respondents’ common stock at a figure of $1,100,000 is grossly excessive, and should be reduced to $8,000, the amount tendered by petitioner to respondents prior to the institution of the appraisal proceeding. It is well settled that the method of appraisal to be employed, the factors to be considered, and the weight to be given to these factors depend upon the circumstances of each individual case. The courts have consistently declined to lay down hard and fast rules, holding that an appraiser must use his own judgment and give such consideration to the various factors involved as he may deem proper (People ex rel. Knickerbocker Fire Ins. Co. v. Coleman, 107 N. Y. 541, 543; Matter of Fulton, 257 N. Y. 487, 494-495). Even where there is an established market in a company’s securities, the market price is not conclusive (Matter of Marcus [Macy & Co.], 273 App. Div. 725, 730).
The proper appraisal in the case at bar is particularly difficult by reason of the relative infancy of the company and other factors referred to in the appraiser’s report.
The experts on valuation who testified as witnesses for respondents represented firms of high standing in the appraisal field. Their appraisals of the value of all the stock of petitioner *724 corporation ranged from $6,687,000 to $8,000,000, as against the appraiser’s figure of $3,300,000 (three times $1,100,000).
The court agrees with the appraiser that these valuations (of respondents’ experts) are excessive in the light of the unlikelihood of dividends in the foreseeable future; the pending expiration of valuable governmental contracts which might not be renewed; the relative ease with which new competitors could come into petitioner’s field by reason of the limited capital required and the availability to all of licenses from International Business Machines Company; the internal discord between the majority and the minority stockholders, and the absence of an established market for the company’s stock.
The court likewise agrees with the appraiser’s view that the valuations testified to by the expert witnesses called by petitioner, also representatives of firms of high standing, are grossly inadequate. These valuations ranged from $64,000 for 100% of the stock (i.e., $21,222.22 for respondents’ one third) to $400,000 (i.e., $133,333.33 for respondents’ one third). These valuations do not give due and proper regard to (1) the favorable position of petitioner corporation in the industry, (2) the phenomenal growth in a short period of the petitioner’s gross sales and net revenues after taxes, (3) the outlook for substantial development and expansion of the market for petitioner’s product, (4) the prospects for petitioner’s retaining and probably increasing its share of the market, as evidenced by its management’s decision to expand its potential capacity to a very large degree and its optimistic forecasts as to future earnings, (5) the skillful management of petitioner, and (6) the popularity, because of heavy income taxes, of stocks in growth industries.
As I pointed out above, it is extremely difficult in this case to arrive at a definite formula for an appraisal of the stock of the petitioner company. At the argument before me, in answer to the court’s query, the attorney for the petitioner could only say that in his opinion appraisal should be based on the net asset value (liquidation value), to wit, $8 per share. This of course does not represent even a small fraction of the value of a profitable going, growing, business.
After a careful study of the testimony, the briefs, the exhibits and the appraiser’s comprehensive report, the court is in agreement with the appraiser that “ it seems reasonable to consider that the future earning capacity of taboo allocable to its common stock will be not less than approximately $600,000 per year after taxes, at least for the foreseeable period of operations under the ibm anti-trust decree * * * ” and that the *725 “ value of the common stock equity in taboo as of February 1, 1959 is five to seven times its net after tax earning as estimated.” The court has therefore reached the conclusion that insufficient basis exists for disturbing the valuation arrived at by the appraiser. Petitioner has been unable to offer any formula which would do justice to the fantastic growth of its business and its excellent prospects at the time fixed for evaluating respondents’ stockholdings.
That phase of petitioner’s cross motion which seeks to strike out certain allegations of respondents’ answer is a renewal of a motion previously denied by this court, but without prejudice to a renewal after the coming in of the appraiser’s report (17 Misc 2d 573). The allegations in question relate to (1) the claim that the 5,000 shares previously referred to herein were invalidly issued and (2) charges that petitioner’s management had diverted corporate assets for the personal gain of its officers and had made excessive and unauthorized payments of corporate funds. Petitioner contends that these allegations are irrelevant to the appraisal. As heretofore indicated, the issue as to the validity of the 5,000 shares was submitted to the appraiser at the suggestion of petitioner, itself. The issue is not irrelevant, since the statute requires an appraisal of the value of the stock of the dissenting shareholders (Stock Corporation Law, § 21, subd. 4; § 38). A valuation of the dissenters’ shares necessarily requires a determination, either by the appraiser or by the court, as to what portion of the validly outstanding shares is represented by the shares held by the dissenters. As to the charges of diversion and waste of corporate assets, it need only be observed that the appraiser’s report shows that these charges played no part in the appraiser’s valuation of the corporate stock of petitioner. The latter was therefore in no way prejudiced by the existence of these charges in respondents ’ answer. This court has likewise not considered those charges in upholding the appraiser’s valuation. In the court’s opinion, the allegations in question should be allowed to remain in the answer.
Respondents are entitled, under subdivision 5 of section 21 of the Stock Corporation Law, to reasonable compensation for the experts retained by them. The appraiser’s valuation was greatly in excess of the $8,000 offered for respondents’ stock by petitioner. An appraisal proceeding was, therefore, necessary to enable respondents to obtain the fair value of their stock. In my opinion, the fees paid to the respondents’ experts, to wit, Standard Research Consultants Inc., a subsidiary of Standard & Poor, Lehman Brothers, and Lionel D. *726 Edie & Go. (appraisers and investment counsellors of international repute), are reasonable and are hereby allowed. The fees paid to Stevenson, Jordan & Harrison, Inc., cannot be allowed under the statute.
As to the appraiser’s fee: the appraiser’s standing at the bar, the magnitude of the task, the many weeks that he and his staff have devoted, and the excellent report rendered, warrant the fee that he requests, but at his own suggestion that an allowance be made for public service, I am fixing his fee at three fourths of the amount which he states he would have charged a private client, plus his disbursements.
The motion to confirm the appraiser’s report and for allowances for experts’ fees and the appraiser’s fee is granted to the extent indicated in this opinion. The cross motion is denied. Settle order.