Francis R. Moran, J.
This is a special proceeding under section 623 of the Business Corporation Law to determine the value of respondents’ common shares of stock of Lipe-Rollway Corporation. The respondents dissented from a proposed recapitalization of this corporation. The court is satisfied that the remaining respondents have complied with the notice conditions set out in section 623 of the Business Corporation Law and are entitled to receive payment for their shares.
On October 23, 1967, the court appointed attorney N. Earle Evans, Jr., appraiser to hear and report with respect to the value of the shares of stock as of March 28,1967, the recapitalization having been authorized at a stockholder meeting March 29,1967.
*806 The court has considered the findings of the appraiser together with all of the moving papers and memoranda of law submitted by the attorneys representing petitioner and respondents. The record is voluminous, indicating the careful and competent preparation by opposing counsel.
The petitioner did offer the respondents $19.75 per share for what it considered the fair market value of the stock on March 28, 1967, the valuation date. The respondents contend that the same share of stock on that date was valued at $40 per share. No issue was more simply and concisely presented than in this case, namely, what is the fair value of the common stock as of March 28, 1967.
Certain guidelines have been established by the courts in determining the value of stock. The cases which recite these , guidelines are referred to by both parties and are primarily the following: Matter of Fulton (257 N. Y. 487); Matter of Standard Coated Prods. Corp. (61 N. Y. S. 2d 179, affd. 271 App. Div. 1007); Matter of Silverman (Hoe & Co.) (282 App. Div. 252).
Using these precedents to guide us, we note that there are at least three constant formulae we can apply to a going concern in determining stock value. The first factor is market value, which is the attraction a stock has in the market place and the extent to which the movement of this stock reflects the unfettered judgment of the buyers and sellers. A price quotation, except for some unusual or extraordinary development, for example, merger, is governed by dividend returns, the regularity of these returns, the potential for expansion and improvement in the commercial field, price-earnings ratios and other variables.
Closely allied to the market value of a stock is the second factor which is its investment value. The latter formula takes into account and overlaps some of the indicia of market value, namely:
1. The market value of comparable securities
2. Capitalization
3. Earnings and dividends
4. Price-earnings
5. The company’s position in the particular field
6. The company’s potential.
It may be more satisfying to use investment value alone in our determination to arrive at the fair value of stock, since this approach is apt to produce more definitive answers to some of the afore-noted factors than market value. But the value of the *807 stock may not be fair unless you do include the variables that are an integral part of any share valuation. For example, you must consider the nature of the business, its relationship to the vastly increasing technological process and the timeliness of its products at a particular date. What we must find is the answer to this question — what would an informed buyer pay and what would an informed seller sell for a share of Lipe-Rollway stock on March 28, 1967, on the open market. To quote Standard (61 N .Y. S. 2d 179, 183, supra): “ It is sometimes said that value is the price on which a willing and informed buyer and seller, neither under compulsion to trade, would meet. That is another way of expressing investment or objective "value.”
The third formula that is used in determining value is net asset value, with one modification — you must appraise net asset value on a going concern basis. Once again we must return to the nature of the business, the nature of the asset, its profitability, liquidity, adaptability and diversification. Since the petitioner is a going concern, the least determinative formula we use is the net asset value, because it has relatively little to do with a going concern. What we must determine then is the posture a share of stock takes when we expose it to the market test and the investment value test.
The appraiser, paying particular attention to the market value of the shares and their investment value, found the fair value of each share to be $22.50. He relied heavily upon the judgment of the trading prices. He used $20 as the probable trade price February 1, 1967, and $25 on March 28, 1967. The appraiser then attributed 50% of this 5-point increase between the above-mentioned figures to the influence of the proposed recapitalization which became public knowledge during this period of time.
The appraiser did consider, as respondents so ably demonstrated, that the market for the shares was relatively inactive. He even accepts the proposition that such a thin, sporadic and inactive market was not per se a true test of actual value. But this does not mean the market is necessarily wrong.
The appraiser continued further, reviewed the indicia of investment value, and compared the earnings of the petitioner with related companies in order to establish some price stability. Having exposed the critical inferior position of the petitioner compared to some of its more powerful competitors in the field of sales, after-tax income, after-tax income as a percentage of sales and yield, the appraiser noted the petitioner “ lags substantially behind the comparison companies.”
*808 Lipe-Bollway Corporation is a close corporation whose control and management rests with a particular family. We must consider this when, in determining fair value of stock, we consider market value and investment value. Would the appraiser’s value of $22.50 a share on March 28, 1967, truly reflect the market value, investment value, and net asset value of a going concern, had the recapitalization not been proposed? I believe so. The earnings of this corporation were advancing, consistent with the inflationary pace but there were no spectacular movements prior to February, 1967. The bid quotations revealed no unusual pattern from 1965 to March 28, 1967. This stock was traded in over-the-counter market, which is a very real market readily available to any knowledgeable investors. This market is well publicized. Certainly the inactivity of a stock is some indication of its value to one who is informed and not under any compulsion to trade. The appraiser found a range which he felt consistent with a determination of fair value and arrived at the figure of $22.50. This value was compatible with the investment value, especially when we consider the yield an investor would demand before purchasing shares of this corporation. Petitioner’s stock price was between 6 to 8 times earnings, a ratio which was markedly inferior to comparison companies.
The petitioner’s motion to confirm the appraiser’s report is granted. The fair value of respondents’ Class “ A ” shares of stock was $22.50 each on the valuation date, March 28, 1967.
In the exercise of its discretion and pursuant to section 623 (subd. [h], pars. [6], [7]) of the Business Corporation Law, the court grants an allowance for interest on the award at the rate of 6% from valuation date. The court further directs that the costs and expenses of this proceeding shall be assessed against the petitioner, including the reasonable compensation for and the reasonable expenses of the appraiser. The refusal of the respondents to accept the corporate offer was not arbitrary, vexatious or otherwise in bad faith. No award is granted for the fees and expenses of counsel for and experts employed by the respondents. The question whether the fair value of the shares materially exceeds the amount which the petitioner offered to pay was carefully considered by the court. The facts in this proceeding were compared with those recited in Matter of Dorsey v. Stern Bros. (31 Misc 2d 747). In that case there was an increase of $3.50 per share above the offer made by the corporation. That court decided such amount entitled the shareholder to reasonable expenses involved in the appraisal proceeding. That case was also governed by former section 21 of the *809 Stock Corporation Law. Under section 623 (subd. [h], par. [7]) of the Business Corporation Law, this court finds that the increase of $2.75 per share, under the circumstances of this case, did not materially exceed the amount petitioner offered to pay.