Yvette M. G. LEIGHTON for and on behalf of herself and all other holders similarly situated of the common stock of American Telephone and Telegraph Company, Plaintiffs,

v.

AMERICAN TELEPHONE AND TELE-GRAPH COMPANY et al., Defendants.

No. 75 Civ. 1251.

United States District Court,
S. D. New York.

July 18, 1975.

Antonio C. Martinez, New York, City, for plaintiffs.

Davis Polk & Wardwell, New York City, for defendants; S. Hazard Gilles-

pie, Edward S. Reid, Robert F. Wise, New York City, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

Plaintiff moves, pursuant to Rule 23, Fed.R.Civ.P., for an order declaring that this action may be maintained as a class action and, pursuant to rule 56, Fed.R.Civ.P., for the entry of partial summary judgment. Defendants, American Telephone and Telegraph Company ("AT&T"), John D. deButts, Edward B. Hanify, Robert D. Lilley and William L. Lindholm, cross-move, pursuant to Rule 12(c) and (h)(3), Fed.R.Civ.P., for judgment on the pleadings on the ground that the complaint fails to state a claim upon which relief can be granted, and on the further ground that the Court lacks subject matter jurisdiction. Inasmuch as material outside the pleadings has been considered, this motion will be treated as one for summary judgment. For the reasons hereinafter stated, plaintiff's motions are denied and defendants' cross-motion to dismiss for failure to state a claim is granted.

This action was commenced by plaintiff, the record owner of 12 shares of AT&T common stock, on March 13, 1975. The first count of the complaint alleges that the proxy statement sent to AT&T shareholders on or about February 27, 1975, in connection with the April 16, 1975 shareholders meeting, was false and misleading with respect to management's proposal to eliminate mandatory preemptive rights in violation of Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a) and Rule 14a–9 promulgated thereunder, 17 C.F.R. § 240.14a–9. The second count of the complaint alleges that the proposal to eliminate mandatory preemptive rights constitutes in fact a tender offer and violates Section 14(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(e).

Defendants argue that the first count is insufficient to state a claim under Rule 14a–9 because the proxy statement contains neither material misstatements nor omissions and is not misleading. They argue that the second count is legally insufficient because the statutorily required purchase of dissenting shareholders' stock by the issuer cannot be considered a tender offer.

Rule 14a–9(a) provides:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

There are at least two elements necessary to state a cause of action in violation of the rule: there must be either a statement which is false or misleading or an omission and the statement or omission must relate to a material fact. The complaint sets forth seven allegedly false statements or omissions. With respect to each of these alleged violations of Rule 14a–9, one of the two essential elements of a cause of action is absent.

The first claimed violation is:

(i) the fact that Telephone will not pay to shareholders who dissent from the defendants' proposal relating to preemptive rights the net asset value of their Telephone shares, but will pay an amount arbitrarily set by Telephone; . . .

Although it is not clear whether plaintiff considers this a false statement or an omission, inasmuch as the Court finds no such statement anywhere in the proxy material, the Court assumes that this is charged as an omission of a material fact.

The proxy statement, in accordance with Schedule 14A, 17 C.F.R. § 240.14a–101, contains a brief summary of the appraisal rights of dissenters under N.Y.B.C.L. § 623. (McKinney's Consol.Laws, c. 4, 1963) With reference to the amount to be offered to dissenting shareholders, the proxy statement points out:

If an election to dissent is filed the Company will offer the shareholder, within seven days after the expiration of the period for filing such election, what it considers to be the fair value of his shares as of the day prior to the Annual Meeting. In the event of disagreement as to fair value the Company will institute a court proceeding for determination of such value. The final order in the proceeding will include an allowance for interest. The costs and expenses of such proceeding will be assessed against the Company except that all or any part of such costs and expenses may be assessed against, and no interest need be paid to, a dissenting shareholder if the court finds that refusal to accept the Company's offer was arbitrary, vexatious or otherwise not in good faith.

Although various factors have been considered in determining the fair value of shares, attention is called to *Application of Deutschmann,* 116 N.Y.S.2d 578 (1952), in which the Appellate Division of the New York Supreme Court specifically held that a dissenting shareholder's refusal to accept an offer to pay him the market value of his AT&T shares was arbitrary and vexatious.

This portion of the proxy statement is a summary of N.Y.B.C.L. § 623(g) which requires the corporation to offer dissenting shareholders a price "which the corporation considers to be their (shares) fair value." In the event a shareholder disagrees with the price set by the corporation, § 623(h)(4) specifies that the court shall fix the value of the shares which for purposes of the statute is "the fair value as of the close of business on the day prior to the shareholders' authorization date, excluding any appreciation or depreciation directly or indirectly induced by such corporate action or its proposal." The considerations which apply to fixing the fair value of stock under the statute have been repeatedly enunciated by the New York courts. In *Application of Behrens,* 61 N.Y.S.2d 179, 182 (Sup.Ct. 1946), *aff'd,* 271 A.D. 1007, 69 N.Y.S.2d 910 (1st Dep't.1947), the court stated:

While there is no legal formula which can be enunciated or applied in valuation proceedings, the appraisal remaining a matter of judgment on the facts in each case, the Court can reiterate accepted principles which, simply stated, are that the appraisal should take account of market value, investment value, and net asset value. Matter of Fulton, 257 N.Y. 487, 494, 495, 178 N.E. 766, 768, 769, 79 A.L.R. 608. The weight to be attached to each factor will naturally vary in accordance with the facts of each case, but appraisers should take account of all these factors, and should not exclude any one from consideration in favor of placing complete reliance upon any other.

Accord *In re Kaufmann, Alsberg & Co.,* 15 A.D.2d 468, 222 N.Y.S.2d 305 (1st Dep't.1961); Application of Silverman, 282 A.D. 252, 122 N.Y.S.2d 312 (1st Dept.1953); *Lipe-Rollway Corporation v. Seligson,* 59 Misc.2d 805, 300 N.Y.S.2d 478 (Sup.Ct.1969). Where there is a free market in a stock and the volume of the transactions and market conditions make it a fair reflection of the buying and selling public's judgment of the stock, market value may be the controlling consideration. *Application of Silverman, supra; Application of Deutschmann,* 281 A.D. 14, 116 N.Y.S.2d 578 (1st Dep't.1952); *Application of Behrens, supra; Lipe-Rollway Corporation v. Seligson, supra.* In *Application of Deutschmann, supra,* the court explained that the market value of AT&T stock,

given the large number of shares trading on the public exchanges, accurately reflected the net asset value and the investment value of the stock. In that case dissenting shareholders contended they were entitled to receive the net asset value of their AT&T shares. The court rejected this contention stating:

[W]e are satisfied that reaonable men could not reasonably have differed concerning the fact that the standard of value of AT&T stock on November 14, 1950, for the purpose of appraisal proceedings, was what it sold for upon the six stock exchanges on which it was listed in the United States. The institution of these appraisal proceedings by stockholders who had refused offers of $152 per share was at least "arbitrary and vexatious" within the meaning of this law.

116 N.Y.S.2d at 585.

■ From a comparison of the proxy statement and New York law, it is readily apparent that the proxy materials accurately summarize that law. Exhibit A to the proxy statement tracks the language of the statute in indicating that the corporation will offer shareholders the fair value of their shares. The quoted material, also, accurately reflects the case law in stating that there are various factors which have been considered in determining fair value and that in a prior appraisal action involving AT&T, a New York court held that it was arbitrary and vexatious of shareholders not to accept the market value offer made by the company. In the circumstances of this case, a fair and accurate statement of the case law cannot be said to be misleading. Therefore, it was completely unnecessary to state that shareholders would not receive net asset value. Inasmuch as the alleged omission is immaterial as a matter of law, there is no triable issue of material fact with respect to this alleged violation of Rule 14a-9. The Court can take judicial notice of what N.Y.B.C.L. § 623 and the cases decided thereunder require. After

having done so, the Court concludes that defendants' statement of the law is neither false nor misleading.

■ The second alleged violation of Rule 14a-9 is:

(ii) the fact that the calculation of the net asset value of Telephone stock requires an appraisal proceeding under Sec. 623 and that the stockholders who insist upon receiving the net asset value of their shares may be held, for that reason alone, personally liable for the costs and expenses of such a proceeding.

Once again, plaintiff does not note whether this is a misstatement or omission. However, the Court will assume that it is alleged to be a material omission. Like the first alleged omission, it concerns solely the New York law relative to appraisal proceedings and, therefore, with respect to it there is no triable issue of fact. The New York appraisal procedure is discussed at length above. From an examination of both the statute and the cases, it is abundantly clear that the material which the plaintiff would have included in the proxy material is factually incorrect. An appraisal proceeding under B.C.L. § 623 is instituted for purposes of determining the *fair value* of the dissenting stockholders' shares and *not* the net asset value. Nowhere in the text of § 623 are the words "net asset value" employed.

It is not altogether clear that the institution of appraisal proceedings would result in the kind of recalculation of the value of AT&T's assets apparently contemplated by plaintiff. *See Application of Marcus,* 273 A.D. 725, 79 N.Y.S.2d 76 (1st Dep't.1948).

It is, also, quite clear that dissenting stockholders will not be assessed the costs and expenses of the appraisal proceeding solely because they insist on receiving the net asset value of their shares. B.C.L. § 623(h)(7) permits the court to assess costs and expenses against dissenting shareholders if the court finds "that their refusal to accept

the corporate offer was arbitrary, vexatious, or otherwise not in good faith." What the shareholder demands is not the conclusive factor in making this determination. Rather,

> " 'Arbitrary and vexatious or not in good faith' are words that are used to characterize appraisal proceedings that are begun without reasonable cause to believe that there can be a greater recovery than the amount offered by the corporation."
>
> *Application of Deutschmann,* 116 N. Y.S.2d at 585.

Whether a shareholder is assessed costs, then, is determined by the fairness and reasonableness of the corporation's offer. Thus, plaintiff's second alleged omission is also immaterial as a matter of law.

■ The third alleged violation of Rule 14a–9 consists of the fact that:

> (iii) the defendants urge the shareholders to take action within the meaning of Sec. 623(b) of the New York Business Corporation Law and vote in favor of the proposal relating to shareholders' preemptive rights and omit to state the material fact that counsel that is competent in such matters should be first consulted by each such shareholder; any vote in favor of such proposal by a shareholder would preclude such shareholder from filing a written notice of objection and demand for the payment of his shares within the meaning of Sec. 623; . . .

The gravamen of this allegation seems to be that the proxy statement fails to state than an attorney should be consulted before a shareholder casts his proxy vote. The purpose of the federal securities laws is to impose a duty to disclose to and inform the shareholder. So long as the shareholder is given the information to enable him to intelligently exercise the corporate franchise, the principal federal interest is at an end.

> "§ 14(a) stemmed from a congressional belief that '[f]air corporate suf-

frage is an important right that should attach to every equity security bought on a public exchange.' . . . The provision was intended to promote 'the free exercise of the voting rights of stockholders' by ensuring that proxies would be solicited with 'explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought.' " *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 381, 90 S.Ct. 616, 620, 24 L. Ed.2d 593 (1970).

The whole scheme of § 14(a), thus, contemplates individual shareholder participation in corporate decision-making as entrusted to stockholders by state law. The purpose is to permit that individual to make his *own* decision after individually weighing the material facts. That a shareholder would be required to consult an attorney before casting his vote is in no way a part of the scheme of federal regulation. Thus, the third alleged omission is immaterial as a matter of law.

■ The fourth alleged violation of Rule 14a–9 is that:

> (iv) the defendants intend to vote in favor of their proposal relating to preemptive rights the proxies submitted unmarked by the shareholders; in 1974, the defendants, or their predecessors in office, have voted against a shareholder's resolution 114,036,990 shares submitted unmarked by certain shareholders.

Once again, it is impossible to determine whether the wrong alleged lies in a false statement or an omission. From an examination of the proxy material it is impossible to find either one.

The letter from the Chairman of the Board on the second page of the proxy statement unequivocally indicates:

> If you do not specify your choices, your proxy will be voted in accordance with management's recommendations; . . .

Plaintiff concedes that this statement is repeated on the proxy itself. The pro-

posal relating to preemptive rights clearly indicates management recommends voting for their abolition and management's recommendation appears on the proxy as required by Rule 14a–4(b)(1). There is absolutely no omission in this respect. To state affirmatively in connection with the preemptive rights proposal how many unmarked proxies were voted by management on another occasion would have been misleading as a matter of law. *See* Rule 14a–9, 17 C.F.R. § 240.14a–9.

■ The thrust of plaintiff's complaint would appear to be that management is permitted to vote unmarked proxies. It is clear, however, that such a procedure is not a violation of § 14(a) so long as this intention is clearly disclosed. Rule 14a–4; 17 C.F.R. § 240.-14a–4. With respect, then, to the fourth alleged infirmity in the proxy materials, there are no triable issues of material fact and the complaint fails to state a violation of Rule 14a–9 as a matter of law.

■ The fifth alleged infirmity in the proxy materials is that:

(v) the defendants seek to intimidate the shareholders from taking action looking towards an appraisal of their stock by threatening them with the imposition of costs and expenses on the basis of defendants' interpretation of *Application of Deutschmann,* 116 N.Y.S.2d 578 (1952); Telephone shareholders, for the most part, are lay people and are neither interested nor familiar with Section 623 or the *Deutschmann* decision; . . .

The Court has discussed above the New York appraisal procedure, the circumstances in which costs will be imposed upon dissenting shareholders, and *Application of Deutschmann.* As has been noted, defendants' proxy materials accurately summarize the New York law and the *Deutschmann* holding. Defendants were required to include the New York appraisal procedures, 17 C.F.R. § 240.-14a–101, and it might have been mis-

leading if defendants had failed to state that dissenting shareholders could be assessed costs if their refusal to accept the corporation's offer was arbitrary and vexatious.

The sixth alleged infirmity in the proxy materials is that:

(vi) the defendants' threat to seek the imposition of costs and expenses in Sec. 623 proceedings is designed to intimidate away thousands of shareholders who are employees of the Bell System from exercising their rights to dissent and seek an appraisal of their stock; any such employee exercising his rights under Sec. 623 would, of necessity, become an adversary of Telephone's management in the appraisal proceeding and risk his tenure or promotion rights; . . .

This allegation is not materially different from the one immediately preceding. Plaintiff does not allege she is an employee of the Bell System and she has come forward with no facts to support this allegation. Inasmuch as the Court has found defendants' statement of the controlling law accurate and required, the purpose of defendants in so stating the law is irrelevant. The sixth allegation, also, fails to state any actionable misrepresentation under Rule 14a–9.

■ The final contention of plaintiff is that:

(vii) the defendants intend to vote in favor of their proposal relating to preemptive rights the shares beneficially held in 'street names'; for the most part 'street names' are those of brokers and investment bankers who stand to profit from the elimination of shareholders' preemptive rights and who are required by the rules of certain national securities exchanges to vote such shares in favor of defendants' proposal where no specific instructions to the contrary are received by the brokers from the beneficial owners of such shares.

Plaintiff's allegations here pertain solely to matters of law which are directly con-

trary to plaintiff's contentions and present no issue of fact. The issuer of a security is required to submit to the record holder sufficient quantities of proxy materials to supply all beneficial owners with copies and to pay the expenses of mailing. 17 C.F.R. § 240.-14a–3(d). The rules of all the major exchanges require member firms to transmit to the beneficial owners all materials so received. *See, e. g.,* American Stock Exchange Rule 576; New York Stock Exchange Rule 451; PBW Stock Exchange Rule 852; Boston Stock Exchange Rules, Ch. XXVI, § 2; Midwest Stock Exchange Rules, Art. XXX, Rule 2. All of the major exchanges prohibit member firms from voting proxies absent instructions from the beneficial owners when rights or privileges of the stock may be substantially affected. American Stock Exchange Rule 577; New York Stock Exchange Rule 452; PBW Stock Exchange Rule 853; Boston Stock Exchange Rules, Ch. XXVI, § 3; Midwest Stock Exchange Rules, Art. XXX, Rule 3; Pacific Coast Stock Exchange Rule X, § 4. The New York Stock Exchange has notified AT&T, by letter dated March 5, 1975, that the management proposal to eliminate mandatory preemptive rights is action which affects substantially the rights and privileges of the stock. Thus, quite contrary to the plaintiff's bald allegation, stock held in street name may not be voted absent specific instructions from the beneficial owners. Consequently, the alleged omission must be deemed immaterial as a matter of law.

In sum, the first cause of action fails to state a claim cognizable under § 14(a) of the Securities Exchange Act of 1934 and must be dismissed. Plaintiff's motion for partial summary judgment is, accordingly, denied.

■ The second cause of action, likewise, fails to state a claim and must be dismissed. Plaintiff alleges that defendants' proposal to eliminate preemptive rights is in reality an invitation to AT&T shareholders to tender their shares to the corporation and violates § 14(e) of the Securities Exchange Act of 1934. Section 14(e) provides:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. The Commission shall, for the purposes of this subsection, by rules and regulations define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative.

Section 14(e) regulates only tender offers. However, the statute itself does not contain a definition of a tender offer. The question, then, is whether the existence of a state statute which gives dissenting shareholders the right to surrender their stock and requires the issuing corporation to pay the dissenters its fair value constitutes a tender offer.

The meaning of "tender offer" as used in § 14(e) has been troublesome. *See, e. g., Smallwood v. Pearl Brewing Company,* 489 F.2d 579 (5th Cir.), *cert. denied,* 419 U.S. 873, 95 S.Ct. 134, 42 L. Ed.2d 113 (1974); *Corenco Corporation v. Schiavone & Sons, Inc.,* 488 F.2d 207 (2d Cir. 1973); *Gulf & Western Industries, Inc. v. Great Atlantic & Pacific Tea Co.,* 356 F.Supp. 1066 (S.D.N.Y.), 476 F.2d 687 (2d Cir. 1973); *Dyer v. Eastern Trust and Banking Company,* 336 F.Supp. 890 (D.Me.1971); E. Aranow & H. Einhorn, Tender Offers for Corporate Control 69–76 (1973). Note The Developing Meaning of "Tender Offer" under the Securities Exchange Act of 1934, 86 Harv.L.Rev. 1250 (1973). Although the literature makes clear that the scope of § 14(e) extends beyond the

conventional battle for corporate control, its reach is not unlimited. Certainly, every purchase of securities is not a tender offer. *See Gulf & Western Industries, Inc. v. Great Atlantic & Pacific Tea Co., supra.* Even under the broadest construction of the term consistent with the remedial purposes of the Act, however, the proposal to eliminate mandatory preemptive rights cannot be considered a tender offer. Deeming the Act to protect a shareholder in the making of fundamental investment decisions, it is clear that statutory appraisal rights serve the same function. That is, they are designed to provide the shareholder with a remedy for corporate action which changes the nature of his investment and to give him the fair value of that investment. There is in the statutory scheme no *offer* to purchase. Rather the corporation is required to purchase its stock on the shareholder's terms, no matter how reluctant the corporation might be. The Court holds that any purchase by AT&T of its stock pursuant to New York's statutory appraisal procedure and incidental to the passage of management's proposal to eliminate mandatory preemptive rights is not a tender offer. Therefore, the second cause of action fails to state a claim upon which relief can be granted and must be dismissed.

In holding that this complaint must be dismissed, the Court in no way implies judicial approval of the proxy statement. Rule 9, Fed.R.Civ.P., requires allegations of fraud to be pleaded specifically. When the specific allegations show no fraud as a matter of law, the complaint must be dismissed. The mere allegation of fraud and the invocation of the federal securities laws does not provide a charter for the Court to rove at will through the affairs of the corporation looking for possible fraud. The Court declines plaintiff's invitation to do so and declines plaintiff's invitation to read her complaint to allege frauds other than those specifically pleaded. All that the Court holds is that the seven alleged

violations of Rule 14a–9, specifically pleaded, do not constitute material omissions or false statements.

Accordingly, defendants' cross-motion for summary judgment is granted and plaintiff's motions for partial summary judgment and the certification of a class are denied.

Settle order on notice.